## HENRY JOSEPH GOINS v. STATE OF MARYLAND

[No. 849, September Term, 1980.]

*Decided March 4, 1981.*

The cause was argued before MOYLAN, MASON and COUCH, JJ.

*Gary W. Christopher, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Maureen O'Ferrall, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William R. Hymes, State's Attorney for Howard County,* and *A. Gallatin Warfield, III, Assistant State's Attorney for Howard County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

A legal rule is not an end in itself but only a means toward an end. It is a working tool that is designed with a deliberate purpose to help achieve some desired goal. The service of the rule and the service of its animating purpose will, if it is

wisely designed, coincide, in the vast majority of cases. Because no scheme fashioned by mortals can anticipate the infinite variety of human experience, however, there will inevitably be occasions when the blind adherence to a rule and the pursuit of its undergirding purpose are in opposition. On such rare occasions, there can be no doubt but that the service of the deeper purpose is paramount. To fail to recognize this is to cease to be judges and to become mere automatons. As Chief Judge Sobeloff observed for the Court of Appeals in *Berry v. State,* 202 Md. 62, 67, 95 A.2d 319, "An indispensable ingredient in judgment, in court as well as out of it, is a modicum of common sense."

Such common sense dictates that we recognize at the outset that the appellant, Henry Joseph Goins, was convicted by a Howard County jury, presided over by Judge J. Thomas Nissel, of very serious criminal behavior. He was convicted of rape in the first degree, of kidnapping, of armed robbery and of the use of a handgun in the commission of a felony. Judge Nissel saw fit to impose three concurrent twelve-year sentences, along with a concurrent five-year sentence for the handgun violation. Upon this appeal, the appellant raises the single contention that he should have had all charges against him forever dismissed because his trial commenced on the 195th day following the appearance of his counsel, 15 days beyond the limit imposed by Maryland Rule 746. He makes this claim notwithstanding the fact that it was his own dereliction in allowing 72 days to lapse before filing his plea of not guilty by reason of insanity that was the effective cause for not meeting the projected January, 1980, trial date that was well within the 180-day guideline.

As we begin our more detailed recitation, the wisdom of *State v. Hicks,* 285 Md. 310, 335, 403 A.2d 356, is our ever resounding leitmotif:

> "It would, in our judgment, be entirely inappropriate for the defendant to gain advantage from a violation of the rule when he was a party to that violation."

The appellant committed his crimes on September 6, 1979. He was charged on October 2 and the appearance of his counsel was entered. On that day, the sands of time, as measured by Maryland Rule 746, began to run. Those sands were due to run out on March 30, 1980. In the meantime, the appellant petitioned for reverse waiver to the juvenile court, a hearing was held on that petition and the petition was denied. Trial on the merits was scheduled for January 30, 1980. On December 13, however, appellant's counsel entered the plea of not guilty by reason of insanity, 72 days after his initial appearance. On December 21, the court made a timely referral of the appellant to the Department of Mental Hygiene. Notwithstanding the fact that Article 59, Section 26 (a) gives the Department 60 days after referral in which to forward a report of its findings to the court, the court ordered the Department to report its findings before February 8, hopefully expediting the process by some two weeks. Even if that optimal time schedule had been met, the inexorable course of events dictated that the appointed January 30 trial date would go by the boards, whether such non-event was formally noted or not.

The appellant, as a secondary but related theme to his argument, urges that the literal terms of Rule 746 b were not woodenly complied with:

> "Upon motion of a party made in writing or in open court and for extraordinary cause shown, the county administrative judge or a judge designated by him may grant a change of trial date."

It is enough to note with respect to the January 30 trial date that no trial, in fairness to the defense, could possibly have been held on that day. Everybody knew it and nobody showed up. That neither party, appellant or State, sought a formal obituary for the trial date and that no official words were spoken over its demise, are beside the point. A self-evident event needs no herald.

The central thrust of the appellant's argument is that the trial did not occur within 180 days. The reason for this is quite apparent. On January 25, a letter was sent by the Clifton T. Perkins Hospital Center to Judge Guy J. Cicone,

the County Administrative Judge, which stated in pertinent part:

> "Unusually heavy demands from the Division of Correction and from the County detention centers for admission of psychiatrically ill patients for treatment have consumed our bed space. We find ourselves unable to schedule admissions within the specified time period. Therefore, an additional sixty days in which to complete the evaluation is respectfully requested. Should an extension not meet with your approval, please contact this office."

Recognizing the reasonableness of the request and alluding to the "unusually heavy demands" mentioned in the Department's request, Judge Cicone, on January 29, extended the time in which to file the report to April 8, 1980. That report was actually received by the court and logged in on April 10. Remarkably, the appellant's trial commenced four days later on April 14.

The appellant does not question the fact that it was in his best interests to defer the trial until the report from Perkins had arrived. Indeed, the trial would have been a farce without such report. He does not question the fact that the necessary wait for that report constituted "extraordinary cause" for delaying the trial within the contemplation of Rule 746 as then written.[1] He seeks rather a mechanical incantation of Rule 746 b. From that mechanistic coign of vantage, he lays down a broad enfilade of subcharges. He points out that the change in trial date just "grew like Topsy" and that nobody ever "granted" such change in so many words. Compounding that, he urges, no judge was ever "designated by" the County Administrative Judge to grant such a change and the County Administrative Judge himself never knowingly granted the change. In support of this he offered a stipulation from Judge Cicone that when Judge Cicone granted the 60-day extension of time to Clifton T. Perkins, Judge Cicone was dealing with that extension as a self-contained phenomenon and was not even thinking of

---

[1]. Effective July 1, 1980, the phrase "good cause" was substituted for "extraordinary cause."

any impact it might have on the 180-day requirement of Rule 746. The appellant urges yet further than even had an appropriate judicial figure knowingly granted a change of trial date, the Rule's required predicate that such granting of change be "upon motion of a party made in writing or in open court," had not been complied with.

If we were to apply that portion of the Rule perversely and mindlessly, as the appellant urges, it would frustrate rather than serve the very purpose that gave birth to it. It is never sufficient to ask, "What does the Rule say?" without making the more significant inquiry, "What was the Rule designed to accomplish?" Fortunately, ample guidance has been provided in that regard. As Chief Judge Murphy carefully pointed out in *State v. Hicks,* at 285 Md. 318:

> "The provisions of Rule 746 are . . . binding upon the prosecution and defense alike. . . ."

The majority of the Court of Appeals in *Hicks* made it very clear that Rule 746, implementing Article 27, Section 591, is a two-way street. In discerning the legislative intent behind Section 591, the Court of Appeals observed that the vexatious problem the General Assembly sought to remedy was the general problem of trial delay, civil as well as criminal, and operating to the detriment of society and the State just as surely as it sometimes operated to the detriment of criminal defendants. It quoted with approval the words of the late Judge Powers in *Guarnera v. State,* 20 Md. App. 562, 318 A.2d 243, at pp. 316-317:

> "Postponement of cases from dates scheduled for trial is one of the major factors contributing to delay in the administration of justice, civil as well as criminal. Courts and court supporting services spend substantial time 'spinning their wheels', in rescheduling cases. Available court time is lost. The time of attorneys and witnesses is lost. Witnesses themselves are lost. Those who are not are put to severe inconvenience as well as actual loss, and end up in despair at the frustrations of being involved in the trial of a case in the courts. The very image of

the judicial system is in serious jeopardy. Public confidence in the courts as instruments of the people is impaired."

Most recently, Judge Wilner in *State v. Lattisaw,* Md. App. , A.2d (No. 883, September Term, 1980, filed on March 3, 1981), pointed out the even-handed purpose of Rule 746. He observed that although the dissent in *Hicks* had looked upon the Rule "primarily from the perspective of the defendant," the majority "looked upon it more from a societal point of view, as a device to alleviate the problems caused to the criminal justice system by delays in initially scheduling cases for trial and by the inappropriate postponing of scheduled trial dates." He went on:

"[T]he Rule was not intended solely to confer new rights upon defendants, but also to hold their feet to the fire. As the Constitutional balancing test under ·*Barker v. Wingo,* 407 U.S. 514 (1972), implies, and as this very case so clearly indicates, delays in trial are not always and exclusively attributable to prosecutorial laxity."

As we now can perceive more clearly with the benefit of such guidance, Maryland Rule 746, under the special circumstances of this case, could have been most appropriately utilized not to protect the appellant from the delay-producing behavior of the State but rather to protect the State from the delay-producing behavior of the appellant. The State was ready for trial at all times. The State did not need to wait upon a report from Clifton T. Perkins; it was entitled to rely upon the universally recognized presumption of sanity. Indeed, it might well have been the State that could have protested the extension of time granted to Perkins or the resetting of the trial from January to April. The State might have urged upon the trial judge that the appellant had not shown "extraordinary cause" for delay because he had been lax in entering the insanity plea in the first instance. At the very least, the State might have insisted that the appellant go through the formality of requesting the postponement "in writing or in open court."

When it saw the purpose sought to be accomplished and the clear benefit to the appellant, the State, with commendable fairness, did not rigidly insist, as was its prerogative, that the appellant go through this idle exercise. That the State should now be pinioned for its fairness, however, is an outrageous suggestion. It was the State that was denied its right to a speedy trial by the appellant, and not vice versa.

When for the clear benefit of the defendant, Judge Cicone gave Clifton T. Perkins the time with which to evaluate the defendant's competency and sanity, he granted the functional equivalent of a postponement, whether he knew he was granting it or not. At the time, no one knew better than defense counsel what impact this might have on the running of the 180 days and whether, if the insanity defense should prove viable, the delay was worth the candle. As Judge Wilner also pointed out in *State v. Lattisaw, supra*:

> "Defense counsel presumably can count to 180 as well as prosecutors; they know when they entered their appearances — when the clock began to tick — and they can figure out when the time under the Rule expires."

It may well be in this case that Article 27, Section 591, as implemented by Rule 746, and as interpreted by *State v. Hicks,* has been violated. If that be the case, it is clear that the appellant has been the violator and the State, his innocent victim. It is but to state the obvious to hold that the appellant will not be permitted to profit from his wrongdoing or, in the words of *Hicks,* "to gain advantage from a violation of the rule when he was a party [in this case the only party] to that violation."

*Judgments affirmed; costs to be paid by appellant.*