# GERARD LARSEN *v.* STATE OF MARYLAND

[No. 1418, September Term, 1982.]

*Decided June 13, 1983.*

136

The cause was argued before LISS, BISHOP and GETTY, JJ.

*Robert A. Diem* for appellant.

*Deborah K. Handel, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Alexander L. Cummings, Assistant Attorney General, Joseph I. Cassilly, State's Attorney for Harford County,* and *Christopher J. Romano, Assistant State's Attorney for Harford County,* on the brief, for appellee.

BISHOP, J., delivered the opinion of the Court.

Gerard Larsen, appellant, was convicted by a jury in the Circuit Court for Harford County of two counts of theft and two counts of false application to insurance companies. Because his trial did not begin until July 7, 1982, 223 days after his attorney entered his appearance, appellant contends that the trial court should have granted his motion to dismiss the charges against him in accordance with Maryland Rule 746 and *State v. Hicks,* 285 Md. 310, on motion for reconsideration, 285 Md. 334 (1979).

The crucial postponement occurred on April 7, 1982, the second trial date, when the case was postponed "due to the unavailability of Judge or Jury to hear case." April 7th was the 133rd day on the Hicks' timetable. No new trial date was

set during that postponement hearing, but appellant's trial counsel (now his appellate counsel) made the following statement:

> "Your Honor, we would ask that the Court dismiss the case. I think the State knew on February the 4th that the Defendant requested a jury trial. The State set it back in when it was suitable for them, and now they tell us they are not ready."

This was an oral motion to dismiss, but no basis or reason was given. From April 7th until the date of trial, July 7th, appellant did not move to dismiss the case. On July 7th the appellant filed, for the first time, a motion to dismiss for lack of a speedy trial, in which he alleged for the first time a violation of Maryland Rule 746 and constitutional rights under the Sixth Amendment of the United States Constitution.[1]

On appeal the only issue raised by the appellant is the failure of the State to comply with Maryland Rule 746. We shall, therefore, treat the constitutional speedy trial issue as abandoned.

## Maryland Rule 736

The State argues that since the appellant did not file his motion to dismiss until July 7, 1982, the date of trial, some 90 days after the April 7th postponement date, he is precluded from raising the issue on appeal by Maryland Rule 736 and *Pennington v. State,* 53 Md. App. 538 (1983). We do not agree with the State's contention that the only real difference between *Pennington* and the case *sub judice* is that the motion in *Pennington* was oral and the motion in this case is in writing. It is not necessary to go into the additional factors in *Pennington* that distinguish that case from this. The only difference between this case and *Carey v. State,* 54 Md. App. 448 (1983), is that in *Carey* the motion

---

1. On November 25, 1981, appellant had filed a motion for speedy trial under the Maryland and United States Constitutions.

was oral and in this case it is in writing. Since the motions in both *Pennington* and *Carey* were oral motions, we are called upon in the case *sub judice* to decide for the first time whether a written motion to dismiss filed on the date of trial comports with the requirements of Maryland Rule 736. As we pointed out in *Pennington* and repeated in *Carey,* a motion to dismiss is governed by the "other motions" category of Rule 736, which is composed of the following three sub-sections:

> "c. *Other Motions.*
>
> Any other defense, objection or request capable of determination before trial without trial of the general issue shall be raised by motion filed at any time before trial.
>
> d. Content of Motions.
>
> A motion filed pursuant to this Rule shall be in writing unless the court otherwise directs, shall state the grounds upon which it is made, and shall set forth the relief sought. A motion alleging an illegal source of information as the basis for probable cause must be supported by precise and specific factual averments.
>
> e. Statement of Points and Authorities.
>
> Every motion shall contain or be accompanied by a statement of points and citation of authorities. A response, if made, shall be filed within 15 days and be accompanied by a statement of points and citation of authorities."

As the Court of Appeals held, and as we in turn have repeatedly held *ad nauseum,* the rules "are not mere guides or bench marks to be observed, if convenient." *State v. Hicks, supra,* 285 Md. at 318; *Pennington, supra,* 53 Md.App. at 542.

With reference to the filing of the motion on the date of trial, we quoted in *Carey* what we had observed in *Pennington:*

"Sections c, d and e of that rule (Rule 736) clearly anticipate something more than a last minute spinning hipshot. . .

While the State must justify any violation of Rule 746, we hardly think that it must come to court on the trial date fully prepared for a hearing on a motion to dismiss, of which nothing has been suggested let alone filed pursuant to Md. Rule 736. Implicit in Rule 736's procedural requirements of writing, grounds, relief, points and authorities and 15 days to respond is the opportunity for the State to prepare its justification for whatever is alleged and prayed by the appellant's motion." *Carey, supra.,* 54 Md. App. at 450.

The motion to dismiss filed in the case before us was "something more than a last minute spinning hipshot. . .". It was filed before trial (c), it was in writing (d), and it did contain a legal memorandum which provided a statement of points and authorities (e). The one item lacking was the fifteen day period required by sub-section (e) as the time allotted for the response of the State. The State's failure to request a postponement to avail itself of this time requirement amounted to a waiver of that requirement. If a defendant files a timely, written motion to dismiss on the date of trial, it then becomes the option of the State to argue the motion at that time or to request a postponement "to prepare its justification for whatever is alleged and prayed by the appellant's motion [to dismiss]." *Pennington,* 53 Md. App. at 542. Whether to grant the postponement, of course, will be in the sound discretion of the trial court. For these reasons we hold that the appellant did comply with Maryland Rule 736 and is not precluded from raising the Maryland Rule 746 issue on appeal.

*Maryland Rule 746*

Appellee sets out in its brief the following docket chronology:

| | |
|---|---|
| November 17, 1981 | Indictment filed. |
| November 25, 1981 | Appearance of counsel for appellant; appellant entered a plea of not guilty and elected a jury trial; appellant filed a motion for speedy trial. |

* * *

| | |
|---|---|
| February 4, 1982 | Trial postponed "due to lack of availability of judges and jurors." [2] |
| April 7, 1982 | Trial postponed "due to unavailability of Judge or Jury to hear case." |
| July 7, 1982 [3] | Appellant filed written motion to dismiss for lack of speedy trial under Maryland Rule 746; hearing on motion to dismiss; motion denied; trial commenced and continued. |
| July 8, 1982 | Trial resumed but not concluded. |
| July 9, 1982 | Trial concluded. |

Maryland Rule 746 provides:

"(a) Within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court pursuant to Rule 723, a

---

**2.** Apparently the "real reason" for the postponement was that the judge before whom the case was brought had a specially set civil non-jury case that failed to proceed, and as a result there was no jury available.

**3.** Appellant was notified on May 25, 1982 of the July 7th trial date.

trial date shall be set which shall be not later than 180 days after the appearance or waiver of counsel or after the appearance of defendant before the court pursuant to Rule 723.

and

(b) Upon motion of a party made in writing or in open court and for good cause shown, the county administrative judge or a judge designated by him may grant a change of trial date."

Failure to comply with the 180 day requirement of the rule mandates dismissal of the charge. *State v. Hicks, supra.* The question in this case is whether the unavailability of a judge and a jury was good cause to postpone the case on April 7, 1982.

As we have previously stated, determination of whether there is good cause must take into account the purpose of section 591 and Rule 746. *Goins v. State,* 48 Md. App. 115 (1981), *aff'd.* 293 Md. 97 (1982). That end is not solely to protect the defendant's constitutional right to a speedy trial, *e.g., State v. Hicks, supra,* 285 Md. at 320; *State v. Green* 54 Md. App. 260 (1983), but also to protect society from the harms of unnecessarily delayed criminal trials. *State v. Lattisaw,* 48 Md. App. 20, 27 (1981). Within constitutional constraints, the legislature has the choice of means to attain this end. In enacting section 591, it has not chosen to prevent all possible causes of delay, *State v. Farinholt,* 54 Md. App. 124 (1983). Apparently it has chosen to prevent *unnecessary* scheduling delays and postponements, which were major causes of trial delays. As Chief Judge Murphy wrote for the Court of Appeals in *Hicks,* the enactment of section 591

". . . manifested the legislature's recognition of the detrimental effects to our criminal justice system which result from excessive delay in scheduling criminal cases for trial and in postponing scheduled trials for inadequate reasons. Judge Jerrold

Powers, speaking for the court, in *Guarnera v. State,* 20 Md. App. 562, 318 A.2d 243 (1974), highlighted the problem underlying enactment of § 591 in these forceful words:

'Postponement of cases from dates scheduled for trial is one of the major factors contributing to delay in the administration of justice, civil as well as criminal. Courts and court supporting services spend substantial time "spinning their wheels" in rescheduling cases. Available court time is lost. The time of attorneys and witnesses is lost. Witnesses themselves are lost. Those who are not are put to severe inconvenience as well as actual loss, and end up in despair at the frustrations of being involved in the trial of a case in the courts. The very image of the judicial system is in serious jeopardy. Public confidence in the courts as instruments of the people is impaired. Judges and lawyers cannot blame the "system" for they are the people who run that system.' " *State v. Hicks, supra,* 285 Md. at 316-17.

In sum, the statute promotes efficient use of the court system by mandating that "the people who run that system" — *i.e.,* the judges, State's attorneys and defense attorneys — ensure that cases be scheduled promptly and postponed only on a showing of good cause.

Sub-section (b) of the statute authorized implementation by the Court of Appeals, which

". . . deemed it essential, as is evident from the language of Rule 746, to place mandatory controls over the scheduling of criminal cases for trial, and over their postponement, to assure that criminal charges would be promptly heard and resolved. . . . The provisions of Rule 746 are of mandatory application, binding upon the prosecution and defense alike. . . ." *Id.* at 318.

In *State v. Lattisaw, supra,* Judge Wilner summarized the Court's implementation of the statute:

> "Although the dissent in *Hicks* viewed the requirements of Rule 746a primarily from the perspective of the defendant — as an extension of his constitutional right to a speedy trial — the majority looked upon it more from a societal point of view, as a device to alleviate the problems caused to the criminal justice system by delays and initially scheduling cases for trial and by the inappropriate postponing of scheduled trial dates."
> *Id.* at 27.

*Accord Briscoe v. State,* 48 Md. App. 169, 180-81 (1981).

Thus, the purpose of the statute and rule is to promote the public interest by requiring the participants in the court system to make efficient use of available judicial resources.

In *Carter* and *Turner v. State,* 54 Md. App. 220 (1983) we stated that:

> "Determination of whether there is good cause for a continuance must take this purpose into account."
> *Id.* at 227.

We held that:

> " 'Good cause' is a normative term, permitting the courts to determine the justification, *vel non* for postponements of criminal trials on a case by case basis. 9 U. Balt. L. Rev. 473, 492 (1980); *See* Poulos & Coleman, "The ABA Standards in Search of a Statehouse," *supra.* Although the term may not be susceptible of precise definition, reference to the aforementioned purpose of section 591 and Rule 746 nonetheless permits some generalization, which may be useful as a heuristic device, explicating case-by-case decisions of whether to postpone trial. Generally speaking, cause for postponement under the statute and the rule may be found if the moving

party, including the court, has exercised reasonable diligence in trying to avoid the need to postpone trial, and the need to postpone outweighs the detriment to the public interest from delay." *Id.* at 229.

In commenting on the change from "extraordinary" to "good" cause, we pointed out that:

"The requirement that the moving party must have exercised reasonable diligence in attempting to avoid the need for postponement has been interpreted under the 'extraordinary cause' standard to require that the need to postpone arise through no fault of the movant. *See State v. Hicks,* 285 Md. 310, 319 (1979) (unavailability of defendant due to fault of neither party would be extraordinary cause); *Guarnera v. State,* 20 Md. App. 562, 574 (1974); *State v. Temoney,* 45 Md. App. 569 (1980). The 'good cause' standard would still require reasonable diligence, albeit less diligence than required under the 'extraordinary cause' standard. *See Calhoun v. State,* 52 Md. App. 515, 521-23 (1982) (severance of codefendant good cause); *Cf. Dennett v. State,* 19 Md. App. 376, 383-84 (1973) (lack of preparation for trial not good cause for postponement under Interstate Detainer Agreement; need for discovery good cause)." *Id.* at 229-30.

We also pointed out that:

"The change to 'good' cause may affect the balance, but does not change the essential consideration that the need to postpone outweigh the detriment to the public interest. An unavoidable absence of a factor necessary for a fair trial — such as counsel, judge, jury or essential evidence — would constitute such a need. *See Calhoun v. State, supra; Cf. Anglin v. State,* 38 Md. App. 250 (1977) (absence of defendant good cause under Intrastate Detainers Act)." *Id.* at p. 230.

We found nothing in the records of the *Carter* and *Turner* appeals ". . . to indicate the condition of the Harford County Circuit Court trial assignment docket at the time that the postponements were granted, except passing references to pending criminal or civil cases." *Id.* at 232. We concluded that the records in those cases did not show good cause for the postponements "within the context of our general requirements." There was "no evidence of reasonable diligence to avoid the need for the postponements." We did state, however, that: "Under extenuating circumstances a need for postponement may be satisfied by showing the reasons for the unavailability of judicial resources on the schedules dates of trial . . .". *Id.* at 233.

We hold that the record in this case, unlike the records in *Carter and Turner, supra,* does provide a basis for finding good cause for the April 7th postponement. On that date the Assistant State's Attorney pointed out that "the Court is going to be engaged in a jury trial, *State of Maryland versus Harris,* and there will be no judge or jury available to hear Mr. Larsen's case." The court went on to point out that the Harris case had time precedence over the case *sub judice* and that ". . . we have no other court available. . .". This standing alone would not be sufficient; however, we are provided with additional information from the transcript of the July 7th hearing on the motion to dismiss. First, the following excerpts provide us with some insight into the condition of the Harford County trial docket, and the efforts of that court to comply with Maryland Rule 746:

> "DEFENSE COUNSEL: . . . But let's look to the reason why the 180 day rule should apply. Primarily, on February 4th of this year, there were four cases that I can recall that were set. My motion lists those cases. It was State versus Brown, State versus Wymer, and State versus Demby. I do not have those case numbers. But I'm sure they could be obtained.
>
> Those cases were postponed to April 7th. The same four cases were set on two different dates,

Your Honor, with jury trials when the State knew in advance they could not try four jury cases on one day. And yet they set them in anyway. The State knew before they give (sic) these cases to the assignment office, there is no way that they could ask the judicial system, the judges and jury to hear four cases on the same day with the same prosecuting attorney. And yet they did it anyway.

And then they come into court and say, 'Your Honor, we are ready to go but there is no jury called.' Well, my question is why didn't they ask a jury? They knew well in advance that the Defendant had asked for a jury trial. It wasn't something he popped on them. On November 25th, 1981 he said he wanted a jury trial. He has never changed his mind. He has never indicated in any way that he wanted anything less than a jury trial.

And yet the State, on two different occasions — and I would also add that on those two different occasions up to today, 223 days has elapsed. That is 43 days over the mandatory rule. Not once has the Defendant asked for a postponement. Not once.

\* \* \*

ASSISTANT STATE'S ATTORNEY: ... The Court is well aware of the numbers and the constraints upon the Court as far as scheduling cases for jury trials. By virtue of the fact it is the Circuit Court and it is a jury trial to begin with. And regardless of whether there is one case or two or twenty scheduled for any given day, it is generally because they are in fact jury trials in some form or another.

Felonies for which the Defendant is automatically entitled to a right for a jury trial, or an appeal because of the sentence imposed, the Defendant has a right to a jury trial. So to say to the Court the State is skirting the issue by putting all these cases in at one time and therefore playing games with the docket, I think is incorrect.

Absent to setting one case in on one given day, there is no way that something is not going to get knocked out or bumped. It has been my own personal policy, and I would submit to the Court, the office's policy that we attempt to try the case with the greatest amount of time on it at the time of trial.

Both of these other dates where this case had to be postponed was because there was a case that had greater age on it than Mr. Larsen's case. I don't offer that necessarily as an excuse, but simply a remark in terms of the application for scheduling of the cases.

\* \* \*

In brief summary Your Honor, what I would submit to the Court is this. There is no question it is beyond the 180 days. But I don't think there is any question that the postponements are not at the State's request. Mr. Diem comes in and says we are pressuring the Court or requesting the Court to postpone it at our request. What I'm submitting to the Court quite frankly is, there was not a judge or jury available to hear this case. And therefore, number one, that is good cause. I don't know how we are supposed to try Mr. Larsen when we have three courtrooms and they are all occupied, as are the judges. And secondly, as far as it being good cause, the cases are set in as quickly as possible."

Finally, Judge Close rendered the following oral opinion, the content of which supplies us with more facts about the scheduling of criminal cases in Harford County:

"THE COURT: All right. The Court is well aware of the method of assignment that is used here. The State schedules these things because really nobody else can do it. Under the circumstances, there are a number of reasons for that.

These cases are scheduled well ahead of time. When a case goes out for cause, it is picked up at the beginning of the next assignment period. Now, I've looked at both these sheets of February 4th, 1982 and April 7th, 1982 which I had. On Judge Cameron's mark for lack of availability of judge and jurors. And also this note is open here that he had especially set Harford Sands case.

Now, it could be, Mr. Turner that in so far as everybody knew Harford Sands was going to go on that day and something happened it didn't. So it is too late to bring in a jury. I don't know the total facts on that. But with regard to it — and by the way, that case was set just about 90 days, I guess, after the indictment of November or December. — Yes, about 90 days the first go-around.

Now, I had this matter on April 7th, 1982 and at that time I was trying a William Harris burglary case. A man who committed about 45 of them in a residential area here.

MR. ROMANO: Mr. Turner is familiar with that.

THE COURT: That was on motion which went for something like a week and that is devastating to anybody's court calender [sic.]. It is also without any question Judge Higenbothom was busy with civil, and Judge Cameron was otherwise busy in his court. There was no way anybody could try the case. Now, that is not the State's fault. That is maybe because we don't have enough judges.

But recently in the Court of Special Appeals this very issue came up and Judge Gilbert said that is good cause.[4] They can't play magic and create a judge and another jury situation. They just have three judges and they are all busy and that is about what it all amounts to in this whole affair.

The rule does say for good cause, and this is good cause. I don't know how else we can do it. He is

---

4. We find no such opinion.

bumping somebody today because this case had priority. The priority goes to age and people in jail. That is the situation. So, I am going to deny the motion to dismiss.

MR. TURNER: May I point out you are saying that is good cause for February 4th and April 8th. That is what Chance says. Maybe good cause for those particular specific days. But not for all the rest of the time, and that leaves us still with 221 days.

THE COURT: I understand what you are saying, I will deny the motion.

MR. DIEM: Can I make a response, Your Honor? Essentially what the Court is saying is, if we can't get a case in the 180 days, then we will get it in when we can. And if that means 223 days, then it is 223 days. If it is 2,223 days, then okay. But when we get a court available?

THE COURT: Mr. Diem, everything is being done to get the cases in within the 180 days, really.

Where the cause for postponement is the unavailability of a judge, a jury or a court room, it might be well in the future for the State to have put into the record actual copies of the trial schedule, along with as much supporting detail as possible indicating the efforts being made by the court and the State's Attorney's Office to comply with Maryland Rule 746.

*Judgments affirmed.*
*Costs to be paid by appellant.*