OPINION OF THE COURT
Eve Preminger, J.
Can the People delay bringing a defendant to trial in order *550 to protect the identity of an undercover police officer who must testify in another case? Defendant who has been awaiting trial for over a year because the People have refused to allow the officer to testify against him before testifying in a murder prosecution moves pursuant to CPL 30.30 for an order dismissing the indictment against him.
Defendant is charged in indictment No. 4523/85 with selling heroin on April 3 and May 3, 1984. The indictment also charges five codefendants with 17 additional narcotics transactions allegedly taking place over the period of more than a year. Defendant is implicated in none of these subsequent transactions.
Defendant Williams and his five codefendants are members of a major narcotics ring styling itself "the Vigilantes”. Three of the five, Delroy Ross, Alexis Lee Perry and Nathaniel Walker, were named in a separate indictment (No. 3734/85) charging them with the murder of Robert Edmunds, a prosecution witness who was to testify against Nathaniel Sweeper, another of their number, in yet another murder trial.
After several informants revealed to the police that Ross, Perry and Walker had committed Edmund’s murder, the police attempted to garner evidence against the Vigilantes and to infiltrate their order. An undercover police officer known to the group as Bob, whose true identity is yet unknown to them, began buying narcotics from several ring members, defendant Williams among them. These are the sales with which defendant Williams is charged in indictment No. 4523/85.
As the number of narcotics transactions between the officer and the Vigilantes multiplied, he and another undercover officer were able to gain the confidence of the ring members. Believing that the officer wished to hire professional killers to carry out a drug-related execution, the three offered to carry it out themselves, and made admissions concerning the Edmunds murder which were secretly videotaped.
Defendant Williams is not implicated in the murder indictment in any way. His role was directing Bob to his codefendant Freeman, who sold the officer the drugs and who introduced Bob to the three defendants charged with the murder. The interrelationship of the two cáses has, however, prevented defendant Williams’ case from coming to trial. The chronology of events is as follows:
Defendant was indicted on the narcotics charges on June 11, *551 1985, although he was not arrested until June 17, from which time he has been continually incarcerated. The People were nevertheless obliged to try defendant within six months of June 11 (CPL 30.30 [1] [a]; 1.20 [17]). Defendant appeared in court on June 18, and the case was adjourned one day for appointment of defense counsel. This day is excludable. Arraigned on June 19th, defendant and his counsel were told that a new indictment would be forthcoming. The People gave similar assurances on June 27, July 3, July 12 and on July 22. In anticipation of the new indictment and awaiting events upon the People’s representations that a new indictment was imminent, defendant made no motions, with the exception of a bail application on July 12. Finally, on August 14, 1985, defendant was arraigned on the superseding indictment, which joined his case with that of several codefendants. No new transactions were alleged in the superseding indictment. That being the case, the six-month period runs from the first indictment as to all of the counts, and all excludable time is calculated from the first indictment, and none from the second (People v Lomax, 50 NY2d 351; People v Osgood, 52 NY2d 37; People v Sinistaj, 67 NY2d 236 [Apr. 3, 1986]). I find the period from June 11 to June 18 (seven days) and the entire period from June 19 to August 14 (56 days) to be includable, as the progress of defendant’s case was completely within the control of the People during this period. Defendant never consented to any of the adjournments and did not contribute to any of the delay (see, People v Sturgis, 38 NY2d 625; People v McCaffrey, 78 AD2d 1003).
The period from August 14 to December 12, 1985 was essentially taken up by motion practice and by consideration of defendant’s and codefendant’s motions by the court; it is, consequently, excludable (CPL 30.30 [4] [a]).
It was during this period, on September 13, 1985, that defendant moved for a severance of his case and for an immediate trial. This followed upon the People’s statement that they intended to delay the trial of the narcotics indictment until after the murder indictment had been tried. When the calendar Judge reserved decision on defendant’s motion for a severance to the trial court, the defendant protested that proceeding in this fashion would violate his right to a speedy trial. The People then stated that, as indictment No. 3734/85 charged Vigilante members Ross, Walker and Perry (albeit not defendant Williams) with murdering a prosecution witness, to try the narcotics indictment first would be to imperil *552 the undercover officer known to the defendants as Bob. Their argument was evidently that even though they would inevitably discover his identity during the course of their own trial the three had only to await revelation of the undercover’s true identity at Williams’ trial; it would then be possible for them to have him killed before he could testify against them. Hearing this argument, the calendar Judge adhered to its original decision.
During the following period (dating from Dec. 19, 1985 and up to Mar. 20, 1986, totaling 91 days) the People prepared the murder case against Ross, Walker and Perry. No action was taken by either side in regard to the narcotics case. On several occasions, defendant’s counsel was absent from court, although he kept in touch with his cocounsel, because it was understood by all parties that the People would be attending solely to the murder case and that they would not be answering ready on indictment No. 4523/85. The period dating from April 1, 1986 to May 29, 1986 (58 days) when the instant motion came before the court can be similarly characterized. At the close of this period, Ross, Walker and Perry entered guilty pleas to both indictments. The interim adjournment, March 20 to April 1, is excludable because it was necessitated by one of defendant Williams’ codefendants on the narcotics indictment, but whether the balance of the period from December 19, 1985 to May 29, 1986, which is determinative of defendant’s motion is also excludable is not so easily answered.
Defendant was unable to obtain a trial from December 19, 1985 to May 29, 1986 solely because the People had made a decision to first try a case in which he was not charged and with which he had no connection. Neither defendant nor any of his codefendants made any motions during this period or in any way impeded the People from proceeding to trial (with the exception of the period following the March 20th adjournment listed above). To the contrary, defendant’s counsel repeatedly and vehemently protested the delay. If there were nothing more than this to the facts, then there would be no question that the delay must be counted against the People. Does the fact that the reason for the delay was the People’s desire to protect an undercover officer require a different result?
There is no exception in CPL 30.30 which excludes situations like the instant one from the six-month period. CPL 30.30 (4) (d) which excludes: "a reasonable period of delay *553 when the defendant is joined for trial with a co-defendant as to whom the time for trial pursuant to this section has not run and good cause is not shown for granting a severance” is not directly relevant in this analysis, nor do the People argue it as a basis for denying the motion. The People do claim, however, that the danger to the undercover was an "exceptional circumstance” within the meaning of CPL 30.30 (4) (g).
The defendant contends that this is not the type of exceptional circumstance which is within the contemplation of the statute, but I reject this argument, as the statute expressly states that exceptional circumstances are not limited to those listed.
I find, however, that the circumstances which existed in the instant case did not justify delaying the trial of this defendant who repeatedly and vociferously clamored for a speedy trial.
It is unfortunately the case that the safety of prosecution witnesses is a common concern in criminal prosecutions, especially where the charge is a serious one. If the position of the People were upheld, there would be little end to the cases in which the People could deny the defendant a speedy trial simply by claiming, in their own discretion, that the undercover police officer had to testify first in one or more other serious cases unrelated to that of the defendant and that the defendant would simply have to wait until the more serious cases were resolved. The arbitrariness of such a situation is easily demonstrated by the cases before me, in which the three defendants face two sets of charges which carry the potential for life terms of imprisonment. No matter which case the officer were to testify in first, there would still be an incentive for the defendants to murder him before he could testify in the second case. The murder of Robert Edmunds by the same individuals against whom the officer was to be a witness demonstrates that such a potential existed here. That potential does not, however, justify tossing away the speedy trial rights of this defendant, who had nothing to do with that crime and from whom no threat is alleged.
Neither is it so simple to equate the danger to Robert Edmunds, a civilian witness, to that faced by the officer. As at least one court has pointed out, special undercover agents are employed to infiltrate and investigate criminal organizations, and they assume their roles knowing full well the risks inherent in their positions (United States v Napolitano, 552 F Supp 465). These risks do not end at the time of a defendant’s *554 arrest; indeed it might well be argued that the danger stemming from impulses of revenge continues to exist for an undercover agent once his identity is revealed until long after a case is resolved, if not indefinitely.
These undeniable dangers do not, however, justify riding roughshod over a defendant’s rights. It would always be far safer, for example, to hood the face of an undercover agent or to hide his true name in criminal cases. Both of these practices are, of course, impermissible (Smith v Illinois, 390 US 129). On the other hand, closing the courtroom to outsiders is a practice which is often resorted to in instances in which an undercover officer may be put in some jeopardy upon testifying (People v Cuevas, 50 NY2d 1022; People v Glover, 57 NY2d 61).
These cases demonstrate that a balancing analysis is necessarily involved whenever issues of a witness’ safety clashes with defendant’s rights. Balancing those concerns in the instant case, I find that the potential for danger to the officer does not overweigh the speedy trial rights of defendant. The instant case is one in which testifying will not significantly increase the danger to the officer since his physical characteristics are well known to the three murder defendants and have been for several years. The only new information which would be revealed at trial is the actual name of the officer. It should also be noted that the murder defendants have been in possession of the other undercover officer’s actual name (which he voluntarily gave them at the time of their arrest) for approximately a year. Weighing these factors and those discussed above against the fact that defendant has yet to be brought to trial, I find that the circumstances in this case were not of a magnitude which would qualify them as exceptional within the meaning of CPL 30.30 (4) (g). Defendaiit’s motion to dismiss is accordingly granted.