537 A.2d 1218

**Paul D. TONEY**

v.

**STATE of Maryland.**

**No. 831, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

March 3, 1988.

Certiorari Granted June 24, 1988.

José Felipé Anderson, Asst. Public Defender (Alan H. Murrell, Public Defender on the brief), Baltimore, for appellant.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Stuart O. Simms, State's Atty. for Baltimore City, Patricia A. Wenck, Gary Ticknor, Sandra L. Kemick and Ara Crowe, Asst. State's Attys. for Baltimore City on the brief), Baltimore, for appellee.

Argued Before MOYLAN, BISHOP and BELL (ROBERT M.), JJ.

BISHOP, Judge.

Appellant, Paul D. Toney, was convicted by a Baltimore City jury of second degree murder, use of a handgun in the commission of a crime of violence and unlawfully wearing and carrying a concealed deadly weapon. For the second

degree murder and the handgun convictions appellant received concurrent twelve year sentences, of which seven years were suspended with the direction that he be placed on probation for five years after the period of incarceration. For the concealed deadly weapon conviction he received a concurrent three year sentence.

Although appellant raises seven issues, we will dispose of this case on the basis of a violation of the time requirement of MD.ANN.CODE art. 27, § 591 and Maryland Rule 4–271, that the trial be held within 180 days.

The chronology of this case follows:

June 25, 1986 – McClain, the victim is killed and appellant is arrested.

July 18, 1986 – Appellant is indicted.

Aug. 13, 1986 – Arraignment—to be rearraigned so that defendant could try to obtain private counsel. (The 180 day clock begins to run).

Sept. 3, 1986 – Rearraignment, trial set for November 12, 1986.

Sept. 15, 1986 – Motion for Speedy Trial.

Nov. 12, 1986 – Case placed on "move list",[1] postponed to November 21, 1986.

Nov. 21, 1986 – Postponement requested by the State; trial set for December 22, 1986.

---

1. The "movelist" is a rescheduling device used in the Circuit Court for Baltimore City to insure that criminal defendants receive a trial within the required 180 day period. At arraignment, a trial date within the 180 day period is assigned, but due to the inherent difficulty in predicting whether any particular defendant will desire a trial, the practice is to overschedule deliberately. If the assigned trial court cannot reach a particular defendant's case on the date assigned, the case is placed on the "movelist" and will be tried by the first available trial court. The administrative judge coordinates the "movelist" each day and will grant a "good cause" postponement if it becomes apparent that a judge or a trial court will not be available. Typically, once on the "movelist", a case will be tried within several days of the original date. By minimizing the "down" time of trial courts an overcrowded docket may be managed effectively within the constraints of the 180 day rule. For a more detailed explanation of the "movelist" *see State v. Frazier,* 298 Md. 422, 430–435, 470 A.2d 1269 (1984).

Dec. 22, 1986 — "Postponed, reset for the first week of February, No Further Postponements, Angeletti, J." (actual docket entry).

Feb. 6, 1987 — "Motion to Dismiss due to violation of Md. Rule 4–271(a) fd. Refer to Adm. Judge CAO to Reset on 3/17/87—9–Pt. .07 (Davis, J.)" (actual docket entry). (Case postponed until March 17, 1987).

Feb. 9, 1987 — 180th day.

Mar. 17, 1987 — Trial begins.

Mar. 19, 1987 — Motion to Dismiss due to lack of speedy trial heard and denied. Davis, J. Motion to Dismiss because of violation of *Hicks'* right heard—denied. Davis, J.

It is from the court's ruling on March 19, 1987, that this appeal is filed. At the time of this trial Art. 27, § 591 provided [2]:

**Setting date for trial; postponement.**

(a) Within two weeks after the arraignment of a person accused of a criminal offense, or within two weeks after the filing of an appearance of counsel or the appointment of counsel for an accused in any criminal matter, whichever shall occur first, a judge or other designated official of the Circuit Court or the Criminal Court of Baltimore

---

2. By Acts of 1987, ch. 222, the Legislature enacted, effective July 1, 1987, the following version:
**§ 591. Trial date.**
(a) The date for trial of a criminal matter in a circuit court:
(1) Shall be set within 30 days after the earlier of:
(i) The appearance of counsel; or
(ii) The first appearance of the defendant before the circuit court, as provided in the Maryland Rules; and
(2) May not be later than 180 days after the earlier of those events.
(b) On motion of a party or on the court's initiative and for good cause shown, a county administrative judge or a designee of that judge may grant a change of the circuit court trial date.
(c) The court of Appeals may adopt additional rules of practice and procedure for the implementation of this section in circuit courts. (1971, ch. 212; 1980, ch. 378; 1982 ch. 820, § 1; 1987, ch. 222.)

City in which the matter is pending, shall set a date for the trial of the case, which date shall be not later than 180 days from the date of the arraignment of the person accused or the appearance or the appointment of counsel for the accused whichever occurs first. The date established for the trial of the matter shall not be postponed except for good cause shown by the moving party and only with the permission of the administrative judge of the court where the matter is pending.

. . . . .

Md.Rule 4–271 provides:

(a) **Trial Date in Circuit Court.**—The date for trial in the circuit court shall be set within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the circuit court pursuant to Rule 4–213, and shall be not later than 180 days after the earlier of those events. On motion of a party, or on the court's initiative, and for good cause shown, the county administrative judge or that judge's designee may grant a change of a circuit court trial date.

. . . . .

The crucial hearing under the rule was that of February 6, 1987 which may or may not have carried the trial date beyond February 9, the 180th day deadline.

The case was called for trial before Judge Arrie W. Davis on the morning of February 6th. The State's Attorney made the following opening remark:

MS. KEMICK; Paul Toney, 18619907. Sandra Kemick for the State. Gary Ticknor is the attorney for the case and Mr. Hedgepeth is here representing the defendant and I understand that it will have to go to the administrative court but we're calling it at this point.

Apparently the State, in an attempt to comply with the 180 day requirement, wanted to call the case and then have it continued until Mr. Ticknor became available. After the case was called for trial by the State, it was referred to the acting Administrative Judge, Kenneth L. Johnson. Before

sending the case to Judge Johnson, Judge Davis stated that he was "prepared to allow the case to be called in this court and continued until such time as Mr. Ticknor is free." After hearing further argument he referred the case to Judge Johnson.

Mr. Ticknor, himself, appeared before Judge Johnson and, after setting out his indispensibility as the prosecutor in the case, Mr. Ticknor stated:

> For those reasons, I'm asking that the case be done with as we tried to do in Part 7 this morning—that we call the case in Part 7, continue the matter until the moment I get out of the trials in Part 10 and then I'll be more than happy to start Mr. Toney's case and try him.

After a statement of objection from appellant's trial counsel, Linwood Hedgepeth, the following exchange took place:

> MR. TICKNOR: Your Honor, *I'm not asking for a postponement,* I'm simply asking that I be allowed to call the case in Part 7, that good cause be found to continue the matter in this courtroom until the minute that I'm available from the case. It's no pleasure that I'm doing this. A two-month trial is exhausting if nothing else, and I'm not looking forward to jumping right out of that one and into this one.
>
> .    .    .    .    .
>
> MR. HEDGEPETH: With regard to the procedure Mr. Ticknor has laid out that this case be called on some sort of continued day-to-day basis, that would be nothing but an evasion of the rules because the case, I can see, is not going to start and you're saying that you're going to attempt to evade the rules of the Maryland Hicks. That's all I have.
>
> THE COURT: Mr. Ticknor, respond to that.
>
> MR. TICKNOR: The situation here is we have no alternative.
>
> THE COURT: He said he would want to call it knowing full well that you want to try it, and he's charging you with an attempt to evade the rules.

MR. TICKNOR: I'm not trying to evade the rules; I'm attempting to get a case to trial as soon as I can. If we call the case and we have a courtroom, as soon as I'm relieved from the case that I'm currently involved in, then we can move as rapidly as possible. In this particular case, good cause has been found on two prior occasions.

(Emphasis supplied). (Neither of the postponements to which Mr. Ticknor referred was under the 180 day Rule nor were either of the previous postponements based on his unavailability).

Judge Johnson made the following disposition:

THE COURT: The Court notes that there's been two cases on the movelist. And from what I've heard from the counsel this morning concerning the request by the State for the Court to find cause, the Court finds. And the desire of the State will be to take it to Part 7, to call it and get a date certain, to evade the movelist, and I assume that that's what it is. And it seems as though there will be the net effect, hopefully, so that you can try this case because it has to be tried. If it returns to this Judge—it's unlikely that it will—for a postponement on behalf of the State, the State will have a very tough time.

The case was then sent back to Judge Davis when Mr. Crowe, another Assistant State's Attorney standing in for Mr. Ticknor, made the following statement:

The case is on the Court's docket today and due to Mr. Ticknor's unavailability, a hearing was held in front of his Honor, Judge Johnson, the Acting Administrative Judge for today, at which Mr. Linwood Hedgepeth, counsel for the defendant, and the defendant were present. Arguments were put on the record as a result of which Judge Johnson did, in fact, find good cause to postpone this case and directed that it be returned to your Honor's court for a date certain to be set. That date agreed upon between Mr. Ticknor and Mr. Hedgepeth is March 17, 1987, your Honor.

Defendant's counsel replied "March 17 is all right with the defense, your Honor" and the court stated "Very well. The case will be set for March 17.

The docket entry for February 6, 1987 contains the following:

2/6/87 Motion to Dismiss due to violation of Md. Rule 4–271(a) fd.

Refer to Adm. Judge CAO to Reset on 3/17/87—9– Pt. .07 (Davis, J.)

Based on our review of the foregoing record it appears that the State, in an attempt to comply with or evade (we are not sure which) the 180 day requirement, wanted to call the case in Part 7 and then have it continued to a "date certain" when Mr. Ticknor would become available.

It appears from the exchange among Hedgepeth, Ticknor and Judge Johnson that the procedure suggested by Ticknor was an attempt to evade the 180 day requirement. Hedgepeth categorically stated that the procedure suggested by Ticknor would evade the rule. Ticknor did not dispute this statement but responded that "... we have no alternative."

There is some inconsistency between the foregoing and the statement of Judge Johnson in his disposition in which he apparently acquiesced in "the desire of the State ... to take it (the case) to Part 7, to call it and get a date certain, to evade the movelist...." It is unclear whether the purpose of the exercise *supra* was simply to evade the movelist or, to evade the statute and the rule, or both.

Before the case was sent to Judge Johnson, the Acting Administrative Judge, and while it was still before Judge Davis, defense counsel Hedgepeth, after giving his version of the chronological history of the case said,

I would ask that the court not go through what to me would be ... seem to be a charade. If the court wishes to, although I would really dispute that there is good cause for a postponement, of course the court has that power. I think the court should not go through the charade of saying we are calling the case and we are

going to keep it, from what I believe I heard, in this court until the middle of March for Mr. Ticknor.

Mr. Hedgepeth continued:

If the court wishes to, based on what the court has said, say that it recommends the postponement and we go to the Administrative Judge at 11:30, fine, the court has that power, but I ask the court not to go through the charade of saying the case is called and its going to be continued for a month or a month and two weeks, and I think it evades the letter and the spirit of the rules.

The court then asked Mr. Hedgepeth whether he was ready to go to trial and he stated "Yes, I am, your Honor, right now." It was subsequent to this that the case was referred to Judge Johnson, the Acting Administrative Judge, who made the foregoing disposition.

To complete our analysis of the record in this case, we emphasize, as we set out above, that the docket entry for December 22, 1986 reads: "12/12/86 Postponed, reset the 1st week of February, No Further Postponements. Angeletti, J." We have reviewed the December 22, 1986 transcript of the hearing held before Judge Angeletti and it is clear from that transcript that Judge Angeletti specifically directed that the case be set in for trial for at least the week before the deadline under the statute or the rule. And it was on that basis that the notation in the docket was made prohibiting any further postponements.

The three conditions required to obtain a postponement beyond the 180 day limit were stated by Judge Eldridge in *Goins v. State,* 293 Md. 97, 112, 442 A.2d 550 (1982) and later explicated by this Court in *Calhoun v. State,* 52 Md.App. 515, 521, 451 A.2d 146 (1982), *rev'd on other grounds,* 299 Md. 1, 472 A.2d 436 (1984) and in *State v. Farinholt,* 54 Md.App. 124, 129, 458 A.2d 442 (1983), *aff'd,* 299 Md. 32, 472 A.2d 452 (1984). These conditions are:

First: a party or the court *sua sponte* must request the postponement.

Second: good cause must be shown by the moving party.

Third: the County Administrative Judge, or a judge designated by him, must approve the extension of the trial date.

52 Md.App. at 515, 451 A.2d 146. We will address the First Condition and then the Third and Second Conditions in that order.

## THE REQUEST

■ In *Farinholt,* we stated that the request need not be formal. 54 Md.App. at 134, 458 A.2d 442. *Goins* and *Calhoun,* both *supra.* We went on to state that there is no requirement that there be a specific postponement request, that it is sufficient if the requesting party seek "some type of relief which by necessity requires the granting of a postponement ... to a date beyond the 180 day limit." 54 Md.App. at 134, 458 A.2d 442. In the case *sub judice,* Judge Johnson described the desire of the State "to take it to Part 7, to call it and get a date certain, to evade the movelist...." Prosecutor Ticknor's specific words were "that we call the case in Part 7, continue [it] until the moment I get out of the trials in Part 10 and then I'll be more than happy to start Mr. Toney's case and try him." Ticknor then specifically stated he was not asking for a postponement but that he "be allowed to call the case in Part 7, that good cause be found to continue the matter" until he was available to try the case. What the State was requesting was not technically a "postponement" but a "continuance" which would have the effect of delaying the case beyond the 180 day limit and which would require a finding of good cause. Based on our review of the record, all parties and the judge knew that the case in which Ticknor was involved would not be completed by February 9th, the 180th day. We hold that the foregoing complies with the *Farinholt* language that "[t]he request condition is met merely by the requesting party's seeking some type of relief which by necessity requires ... a postponement ... beyond the 180 day limit". 54 Md.App. at 134, 458 A.2d

442. Technically, there was a request for a "postponement" beyond the 180 day limit.

## APPROVAL

Administrative Judge Johnson said, "[a]nd from what I've heard from counsel this morning concerning the request by the State for the court to find cause, the Court finds." The Court may have finished the sentence with "cause" or "good cause"; however, regardless, we hold that there is enough in the above to support a conclusion that the court did find good cause to postpone the case beyond the 180 day limit and that whatever the motive of the State may have been, the Administrative Judge and counsel knew that whatever the device used, the case would not be tried within the 180 days.

The Administrative Judge seems to have viewed the continuance as a means to evade the movelist and not to evade the requirement to find good cause for postponement beyond the 180 day time limit. We hold that there was a good cause determination made by the Administrative Judge and the effect of that action, whether it be called a continuance or a postponement, carried the time of trial beyond the 180 day time limit.

## GOOD CAUSE

██ We must now determine whether the reason for the good cause finding was sufficient, *i.e.*, whether there was good cause. The only reason for the delay was the unavailability of the prosecutor, Mr. Ticknor, to whom the case was assigned. The prosecutor stated it in this manner:

MR. TICKNOR: The only situation I'm suggesting here, Your Honor, is that because of the nature of this case and the nature of the witness in this particular case, with whom I've developed a rapport, I do believe that I am the appropriate person to try this case. I don't believe that the Assistant State's Attorneys are fungible; I believe we are each unique. And in this case a rapport with one particular witness has been developed, and that

particular witness is extremely important because all of the witnesses are involved in terms of being related to, friends of, or the girl friend of the victim. This witness is an independent witness who is scared and will come to trial and has allowed me to believe that he will in fact show and come to trial if I request him to do so, but I don't believe that such a rapport can be developed in a short period of time by another Assistant State's Attorney. For those reasons, I'm asking that the case be done with as we tried to do in Part 7 this morning—that we call the case in Part 7, continue the matter until the moment I get out of the trials in Part 10 and then I'll be more than happy to start Mr. Toney's case and try him.

Fundamentally, this was the same reason which Judge Angeletti found was not good cause on December 22, 1986, except at that time Ticknor's conflicting case had not started and on February 6th it was underway [4]. The significance of this is the following set out from appellant's trial counsel:

If he wants to talk about rapport with a witness, he knew about this witness December 22nd until today. I believe another prosecutor could have taken it; I don't care if Mr. Schmoke [the State's Attorney for Baltimore City] took it. I don't think the State can do that, what they're doing, for Mr. Ticknor's convenience or whatever.

(We feel constrained to add that when Toney was finally tried on March 24, 1987, Mr. Ticknor neither tried the case nor, from what we can determine, in any way participated in the actual trial of this case.)

---

4. Judge Angeletti granted a postponement only after he found that there was no judge available to try the case. In addition, he did not postpone the case beyond the 180th day. He made it clear, however, that he did not view the indispensibility of Mr. Ticknor as a sufficient basis to postpone the case beyond the 180th day and it was for this reason that he explicitly stated it was to be tried during the first week in February and that there would be no further postponements. In fact he explicitly refused to postpone the case because of Mr. Ticknor's unavailability.

In *Larsen v. State,* 55 Md.App. 135, 145, 461 A.2d 543 (1983), *cert. denied,* 298 Md. 706, 473 A.2d 458 (1984), we held that postponement beyond the 180 day limit because of the unavailability of a judge or jury amounted to good cause. The following from *Larsen* will be helpful in addressing the facts in the case *sub judice.*

As we have previously stated, determination of whether there is good cause must take into account the purpose of section 591 and Rule 746. *Goins v. State,* 48 Md.App. 115 [425 A.2d 1374] (1981), *aff'd.* 293 Md. 97 [442 A.2d 550] (1982). That end is not solely to protect the defendant's constitutional right to a speedy trial, *e.g., State v. Hicks, supra,* 285 Md. [310] at 320 [403 A.2d 356 (1979)]; *State v. Green,* 54 Md.App. 260 [458 A.2d 487] (1983), but also to protect society from the harms of unnecessarily delayed criminal trials. *State v. Lattisaw,* 48 Md.App. 20, 27 [425 A.2d 1051] (1981). Within constitutional constraints, the legislature has the choice of means to attain this end. In enacting section 591, it has not chosen to prevent all possible causes of delay, *State v. Farinholt,* 54 Md.App. 124 [458 A.2d 442] (1983). Apparently it has chosen to prevent *unnecessary* scheduling delays and postponements, which were major causes of trial delays. As Chief Judge Murphy wrote for the Court of Appeals in *Hicks,* the enactment of section 591

"... manifested the legislature's recognition of the detrimental effects to our criminal justice system which result from excessive delay in scheduling criminal cases for trial and in postponing scheduled trials for inadequate reasons. Judge Jerrold Powers, speaking for the court, in *Guarnera v. State,* 20 Md.App. 562, 318 A.2d 243 (1974), highlighted the problem underlying enactment of § 501 in these forceful words:

'Postponement of cases from dates scheduled for trial is one of the major factors contributing to delay in the administration of justice, civil as well as criminal. Courts and court supporting services spend substantial time "spinning their wheels" in rescheduling cases.

Available court time is lost. The time of attorneys and witnesses is lost. Witnesses themselves are lost. Those who are not are put to severe inconvenience as well as actual loss, and end up in despair at the frustrations of being involved in the trial of a case in the courts. The very image of the judicial system is in serious jeopardy. Public confidence in the courts as instruments of the people is impaired. Judges and lawyers cannot blame the "system" for they are the people who run that system.'" *State v. Hicks, supra*, 285 Md. at 316–17 [403 A.2d 356].

In sum, the statute promotes efficient use of the court system by mandating that "the people who run that system"—*i.e.*, the judges, State's attorneys and defense attorneys—ensure that cases be scheduled promptly and postponed only on a showing of good cause.

55 Md.App. at 141–42, 461 A.2d 543. We went on to state:

Thus, the purpose of the statute and rule is to promote the public interest by requiring the participants in the court system to make efficient use of available judicial resources.

*Id.* at 143, 461 A.2d 543.

Whether there is good cause for a continuance must take the foregoing into account. This would at least include a determination that there has been a showing by the moving party, including the court if the court is the moving party, that reasonable diligence has been exercised to avoid the postponement and a finding that the need to postpone outweighs the detriment which the delay may cause to the public interest. *Cf. Larsen*, 55 Md.App. at 142–43, 461 A.2d 543. Although the *Hick's* standard of "extraordinary cause" required that the need to postpone arise through no fault of the movant, present "good cause" standard still requires reasonable diligence, albeit less than that required under the previous "extraordinary cause".

It follows that reasonable diligence under the "good cause" standard, could involve some fault on the movant.

"Diligence" is defined as "persistent effort; assiduity" (American Heritage Dictionary, New College Edition, p. 369). As early as December 22, 1986, Mr. Ticknor expressed his concern that he was the only prosecutor prepared to try the case *sub judice.* At that time he was told by the then Acting Administrative Judge that this was not a basis for a finding of good cause. We do not intend to imply that future administrative judges were bound by this ruling; however, the fact is that the State was expressly on notice that on that date it had only one prosecutor available to try Toney and that at least one judge had indicated that was not good cause. In addition, on December 22, 1986, the State was advised there would be no further postponements and the case must be tried before the 180 day deadline. Yet during the 49 days intervening between December 22, 1986 and the 180th day, February 9, 1987, the State did absolutely nothing to have a back-up for Mr. Ticknor in case of his unavailability. (Apparently, however, the state was able to find a substitute between February 6, 1987 and March 17, 1987). We are aware that our review must address only the February 6th postponement, however, since "good cause" does involve the exercise of reasonable diligence, after giving careful consideration to the history of this case, we hold that the State did not exercise the reasonable diligence required under the "good cause" standard. Were we to hold otherwise, based on the record before us, the precedent would have been set for the unavailability of an assigned prosecutor to be on an equal footing with the unavailability of a judge or a courtroom as a basis for good cause determinations under the statute and the rule.

By our holding in this case we do not intend to convey the impression that the unavailability of an assigned prosecutor never amounts to good cause to postpone beyond the deadline.[5] We can envision good cause being found where an

---

**5.** Other jurisdictions have held both ways on this issue. Finding good cause: *People v. Luparello,* 187 Cal.App.3d 410, 430–431, 231 Cal.Rptr. 832 (1986) (defendant alleged a violation of his speedy trial rights, but

unforeseen event and circumstance arises close to the trial
date in a case which, because of its complexity, must, in

---

failed to specify whether he relied on the federal constitutional guarantee or on the state based remedy, and the court held that there was no speedy trial violation when the prosecution received a postponement because the prosecutor was "unexpectedly involved with another murder trial" and that a prior commitment was "unavoidably unforeseeable".); *Key v. State,* 463 A.2d 633, 635–636 (Del.Supr.1983) (defendant alleged a violation of his state and federal speedy trial rights, which were nearly identical under the Sixth Amendment and *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The Court held there was no speedy trial violation, although it stated, in *dictum,* that excessive caseloads on prosecutors is a factor weighing against the prosecution, though less heavily than intentional conduct, should there be a delay in the trial.); *United States v. Ditommaso,* 817 F.2d 201, 209–210 (2nd Cir.1987) (defendant alleged a violation of his federal statutory right to a speedy trial, which mandated a trial within 70 days of the later of either the filing of charging document or the first appearance of the defendant. The Court held that there was no speedy trial violation where the trial court allowed a postponement due to the ill health of the chief prosecutor on the grounds that such a postponement met the "ends of justice".)

Jurisdictions not finding good cause: *People v. Jones,* 68 N.Y.2d 717, 506 N.Y.S.2d 315, 497 N.E.2d 682 (1986); (defendant alleged a violation of his state speedy trial rights, which mandated that he be tried within six months of his indictment unless there was an "exceptional fact or circumstance" for a postponement. The Court held that a postponement requested by the prosecution because of a prosecutor's planned vacation was not an "exceptional fact or circumstance" even though the prosecution had been ready for trial 17 months because of postponements by the defense.); *People v. Williams,* 132 Misc.2d 549, 504 N.Y.S.2d 364 (1986) (defendant alleged a violation of his state speedy trial rights, which mandated that he be tried within six months of his indictment unless there was an "exceptional circumstance" for a postponement and the Court held that the defendant's speedy trial rights were denied and dismissal was required where the reason for the postponement was that the prosecution desired to try an unrelated murder case first and alleged that the life of an undercover policeman would be in jeopardy if his identity were disclosed at defendant's trial.); *Stewart v. State,* 699 S.W.2d 695, 696–697 (Tex.App.1985) (defendant alleged a violation of his state speedy trial rights, which mandated that he be tried within 120 days unless "exceptional circumstances" were shown for a postponement. The Court held that a delay in the trial because the prosecution desired the presence of two prosecutors familiar with the case was not an "exceptional circumstance".); *Santibanez v. State,* 717 S.W.2d 326, 330–331 (Tex.Crim.App. 1986) (defendant alleged a violation of his state speedy trial rights, which mandated that he be tried within 120 days, unless "exceptional circumstances" were shown for a postponement. The Court held that a delay in the trial because the prosecution had internal problems which left the office understaffed was not an "exceptional circumstance".

fairness to the State, be tried by a previously assigned prosecutor. We do not find the case *sub judice* to be of such complexity and, it is obvious, that the event or circumstance in this case was neither unforeseen nor arose close to the trial date. Also, the size of the prosecutorial staff must be considered. The Baltimore City State's Attorney's Office has a staff of 137 [6] assistants, a fact which may not go unnoticed when considering the issue in this case.

Based on the foregoing, we have no alternative but to direct that the indictment be dismissed. As Chief Judge Murphy stated in no uncertain terms in *State v. Hicks,* 285 Md. 310, 318, 403 A.2d 356 (1979):

"The provisions of Rule 746 (now Rule 4–271) are of mandatory application, binding upon the prosecution and defense alike; they are not mere guides or benchmarks to be observed, if convenient.... [D]ismissal of the criminal charges is the appropriate sanction where the State fails to bring the case to trial within the 120 day (now 180) prescribed by the Rule and where 'extraordinary cause' (now good cause) justifying a trial postponement has not been established."

*State v. Robertson,* 72 Md.App. 342, 351, 529 A.2d 847 (1987); *State v. Green,* 54 Md.App. 260, 264, 458 A.2d 487 (1983), *aff'd,* 299 Md. 72, 472 A.2d 472 (1984). *Goins v. State,* 293 Md. 97, 442 A.2d 550 (1982); *Coleman v. State,* 49 Md.App. 210, 431 A.2d 696 (1981); *Scott v. State,* 49 Md.App. 70, 430 A.2d 615 (1981); *State v. Hiken,* 43 Md. App. 259, 405 A.2d 284 (1979).

JUDGMENTS REVERSED.

COSTS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.

---

**6.** Maryland Lawyers' Manual, June, 1987 Edition, pp. 28, 29, County List/M.S.B.A. Members.