553 A.2d 696

**STATE of Maryland**

v.

**Paul D. TONEY.**

**No. 43, Sept. Term, 1988.**

Court of Appeals of Maryland.

Feb. 28, 1989.

Stuart O. Simms, State's Atty. for Baltimore City, J. Joseph Curran, Jr., Atty. Gen., Ann N. Bosse, Asst. Atty. Gen., Baltimore, all on brief, for petitioner.

José Felipé Anderson, Asst. Public Defender, Alan H. Murrell, Public Defender, Baltimore, both on brief, for respondent.

124

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

MURPHY, Chief Judge.

Maryland Code (1957, 1987 Repl.Vol.) Art. 27, § 591 and Maryland Rule 4–271 require that a criminal case in the circuit courts of the State be tried not later than 180 days after the earlier of the appearance of counsel or the first appearance of the defendant before the court.[1] Both the statute and the Rule authorize the administrative judge or that judge's designee to change a trial date beyond the 180–day period "for good cause shown." The issue raised in the present case is whether a designated administrative judge abused his discretion or committed an error of law when he determined that the unavailability of the prosecutor assigned to try the case constituted good cause for postponement.

I.

On June 25, 1986, an altercation occurred between Paul D. Toney and Charles McClain, during which Toney shot and stabbed McClain, causing his death. Toney was charged on July 18, 1986, with first and second degree murder and related weapons violations. He first appeared before the Circuit Court for Baltimore City on August 13, 1986; on that date the 180 day clock began to run. Toney was rearraigned on September 3, 1986, and trial was scheduled for November 12, 1986. Because no courtroom was available on that date, the case was postponed until November 21, 1986. On that date, the parties appeared before designated administrative judge Edward J. Angeletti. Over Toney's objection, the State requested a postponement for reasons related to the late receipt of certain evidence.

---

1. Unless otherwise indicated, all section references are to Article 27 of the Code.

Judge Angeletti found good cause for the postponement and rescheduled trial for December 22, 1986.

On that date, the parties appeared again before Judge Angeletti. The State, represented by Gary Ticknor, the prosecutor assigned to the case, requested that the case be postponed because he was scheduled to begin trial before Judge Robert I.H. Hammerman on January 5, 1987, in a series of four murder cases unrelated to the Toney case. Ticknor explained that because of the holiday interruptions, the numerous motions to be heard in the unrelated cases, and the fact that Toney intended to call ten witnesses, it would be impossible to complete trial of Toney's case by January 5.

Toney objected to the postponement, and Judge Angeletti ordered that trial begin that afternoon before Judge Kathleen O. Friedman. Because Judge Friedman was then unavailable to try the Toney case, Judge Angeletti agreed to a postponement, finding that the lack of an available court constituted good cause. After noting that Ticknor would be trying a series of four murder cases beginning January 5, Judge Angeletti ordered that the Toney case "be put in for a trial, no later than the first week of February," and that there would be no further postponements.

Trial was thereafter set for February 6, 1987 before Judge Arrie W. Davis. Because Ticknor was still trying the unrelated murder cases, Assistant State's Attorney Sandra Kemick represented the State. She requested that the case be called and then continued by Judge Davis until Ticknor became available. Toney objected. He argued that calling the case and then allowing it to be continued was an attempt to evade the 180 day requirement of § 591 and Rule 4-271. Judge Davis properly declined to proceed in the manner requested by the State, and instead referred the case to acting administrative judge Kenneth L. Johnson.

Both Toney and Ticknor appeared at the hearing before Judge Johnson. Upon inquiry by the court, Toney stated that he was unwilling to waive the 180 day limit. Ticknor,

nevertheless, argued that there was good cause for granting a postponement. He first advised the court of the importance of the case. He said that he had developed a "rapport" with a key prosecution witness, one who was not related to, or a friend of the victim, as were the other State witnesses; that this key witness was afraid to testify but, because of Ticknor's rapport with the witness, he would appear for trial; and that such a rapport was not readily transferable to another prosecutor. Ticknor said he was prepared to prosecute the Toney case immediately upon the conclusion of the cases he was then trying.

Toney acknowledged that the case was an important one. But, he argued, the State should have made earlier efforts to transfer the case to another prosecutor who could undertake to develop the same rapport with the witness. Toney noted that the case had already been postponed twice. He said that another prosecutor could undertake the assignment upon five days' preparation.

The administrative judge found good cause for the postponement and the trial was rescheduled for March 17, 1987. On that date the case was called for trial before Judge Arrie Davis, with Assistant State's Attorney Patricia Wenck representing the State. Wenck had replaced Ticknor as the assigned prosecutor in the Toney case because Ticknor was still trying the unrelated murder cases which had been the cause of his continuing unavailability. Toney moved to dismiss the indictment on the ground that § 591 and Maryland Rule 4–271 had been violated. He again argued that Ticknor's unavailability due to the conflict with his trial schedule was not good cause for a postponement. Toney contended that the State's Attorney's Office should have provided a substitute counsel in light of its knowledge of Ticknor's trial schedule. And he also noted that substitute counsel had in fact been provided for the trial beginning on March 17, 1987, indicating that such a substitution was possible.

Judge Davis observed that in granting each of the prior postponements the administrative judge had found good

cause to exist. Expressing reluctance to set aside the administrative judges' finding of good cause, Judge Davis denied Toney's motion to dismiss. The case proceeded to trial, and on March 24, 1987, the jury convicted Toney of second degree murder, use of a handgun in the commission of a crime of violence, and unlawfully wearing and carrying a concealed deadly weapon. On April 28, 1987, Judge Davis imposed concurrent twelve year sentences, of which seven years were suspended, for the murder and handgun convictions and imposed a concurrent three year sentence for the deadly weapon conviction. Judge Davis also ordered that Toney be placed on five years' probation upon release.

Toney appealed to the Court of Special Appeals, raising seven issues, which included the question of whether the lower court had abused its discretion or committed an error of law in finding good cause for postponing the case beyond the 180–day limit of § 591 and Rule 4–271. In *Toney v. State,* 74 Md.App. 397, 537 A.2d 1218 (1988), the intermediate appellate court held that the administrative judge had violated the mandate of the statute and the Rule. It indicated that the critical hearing occurred on February 6, 1987 when Judge Johnson granted the postponement which carried the case beyond the 180 day limit. It noted that under *Goins v. State,* 293 Md. 97, 442 A.2d 550 (1982), *Calhoun v. State,* 52 Md.App. 515, 451 A.2d 146 (1982), *rev'd on other grounds,* 299 Md. 1, 472 A.2d 436 (1984), and *State v. Farinholt,* 54 Md.App. 124, 458 A.2d 442 (1983), *aff'd* 299 Md. 32, 472 A.2d 452 (1984), a postponement beyond the 180 day limit required that three conditions be satisfied: (1) a party or the court *sua sponte* must request the postponement; (2) good cause must be shown by the moving party; and (3) the county administrative judge or that judge's designee must approve the extension of the trial date. Initially, the court found that the first and third conditions had been satisfied—that the State had requested a postponement and that administrative judge Johnson had granted the State's request for a postponement.

The court then considered the second requirement—whether the State had shown good cause for a postponement. It indicated that a finding of good cause "would at least include a determination that there has been a showing by the moving party ... that reasonable diligence has been exercised to avoid the postponement and a finding that the need to postpone outweighs the detriment which the delay may cause to the public interest." 74 Md.App. at 410, 537 A.2d 1218. The court defined reasonable diligence as persistent effort and assiduity. *Id.* It then found that the State had not satisfied the reasonable diligence standard because it had not provided substitute counsel when it was aware of Ticknor's conflicting trial schedule. It added, however, that it was not suggesting that the unavailability of an assigned prosecutor could never amount to good cause to postpone beyond the 180 day deadline. Rather, the court indicated that good cause might be found when an "unforeseen event and circumstance arises close to the trial date in a case which, because of its complexity, must, in fairness to the State, be tried by a previously assigned prosecutor." *Id.* at 412–13, 537 A.2d 1218. The court noted that the Toney case was not complex, that the circumstances causing Ticknor's conflict were not unforeseen, that these events did not arise close to the trial date, and that the Baltimore City State's Attorney's Office had a sufficiently large staff that a substitute could have been provided. Consequently, the court concluded that Ticknor's unavailability did not constitute good cause for a postponement. Based upon its finding that § 591 and Rule 4–271 had been violated, the court ordered that the indictment against Toney be dismissed. Upon the State's petition, we granted certiorari to decide whether the administrative judge properly determined that Ticknor's unavailability due to conflicting trial schedules constituted good cause for postponement beyond the 180 day limit.

## II.

As already observed, § 591 and Rule 4–271 both require that the trial of a criminal defendant in a circuit court

commence within 180 days of the earlier of the appearance of counsel or the first appearance of the defendant in circuit court. They also provide that the county administrative judge or that judge's designee may extend the date of trial beyond the 180–day limit upon finding good cause for such a delay. In *State v. Frazier*, 298 Md. 422, 470 A.2d 1269 (1984), Judge Eldridge, writing for the Court, addressed the issue of whether the unavailability of a court caused by overcrowded court dockets constituted good cause for delay beyond the 180–day limit of § 591 and Rule 4–271 (then Rule 746). In that case we focused upon "the authority of a judge, hearing a motion to dismiss based upon an asserted violation of § 591 and Rule 746, to re-examine the administrative judge's finding of 'good cause.'" 298 Md. at 448–49, 470 A.2d 1269. Initially, we acknowledged that as a general rule a trial judge ruling on a matter is not bound by another judge's prior ruling on the same matter. *Id.* at 449, 470 A.2d 1269. Nevertheless, we found that § 591 and Rule 4–271 exhibited a legislative intent which contravened this general rule because these provisions require that the authority to determine the existence of good cause be vested in the administrative judge; and that the trial judge, in ruling on a motion to dismiss, is not authorized to reverse the administrative judge's finding of good cause absent a clear showing of abuse of discretion. *Id.* at 449–54, 470 A.2d 1269. Thus, we held that with regard to the good cause requirement of § 591 and Rule 4–271 "the trial judge (as well as an appellate court) shall not find an absence of good cause unless the defendant meets the burden of demonstrating either a clear abuse of discretion or a lack of good cause as a matter of law." *Id.* at 454, 470 A.2d 1269. We noted that "it is the administrative judge who has an overall view of the court's business, who is responsible 'for the administration of the court,' who assigns trial judges, who 'supervise[s] the assignment of actions for trial,' who supervises the court personnel involved in the assignment of cases, and who receives reports from such personnel," and "[c]onsequently, the administrative judge is ordinarily

in a much better position than another judge of the trial court, or an appellate court, to make the judgment as to whether good cause for the postponement of a criminal case exists." *Id.* at 453–54, 470 A.2d 1269. We also noted that the trial judge's role in entertaining a motion to dismiss under § 591 and Rule 4–271 is a limited one because the statute and the Rule have "deprived [the trial judge] of the authority to exercise independent judgement concerning good cause for postponement." *Id.* at 450, 470 A.2d 1269. Consequently, we held that the trial judge may grant such a motion only "if the case was not tried within 180 days and if the trial was not postponed beyond that deadline in accordance with the statute and rule." *Id.* at 454, 470 A.2d 1269.

Judge Eldridge next examined in *Frazier* whether the administrative judge's finding that court congestion constituted good cause for a postponement beyond the 180–day limit was a clear abuse of discretion or erroneous as a matter of law. We recognized that during the period "[f]rom 1971 until 1980, when § 591 and rule 746 required 'extraordinary cause' for the postponement of a criminal case, it was arguable that, as a matter of law, overcrowded dockets did not constitute sufficient cause for a postponement." *Id.* at 458, 470 A.2d 1269. In its 1980 legislative session, however, we observed that the Legislature changed the extraordinary cause requirement to one which merely required that the administrative judge find good cause for delaying a criminal trial beyond the 180–day limit. We found that by changing the law in this way, the Legislature "clearly intended to expand those circumstances furnishing the requisite cause for postponing a trial date beyond 180 days." *Id.* at 459. To determine if court congestion could properly be included among those circumstances which constituted good cause for postponement, we carefully examined the testimony of the bill's sponsor as presented to the legislative committee considering the proposed legislation to change § 591 to a good cause standard. We found that the Legislature's decision to change the extraordinary cause requirement to one of good cause "clearly indicated a

legislative intent that crowded court dockets may constitute sufficient cause for trying a case beyond the 180-day deadline." *Id.* at 461, 470 A.2d 1269. Consequently, we rejected the argument that, as a matter of law, an overcrowded court docket cannot justify a change of trial date beyond the 180-day limit. *Id.* at 461, 470 A.2d 1269.

### III.

In the present case, the Court of Special Appeals properly applied the principles of *Frazier* when it concluded that the unavailability of a prosecutor does not, as a matter of law, constitute a lack of good cause for a postponement. It did not, however, properly follow *Frazier's* guidelines when it held that the administrative judge abused his discretion and committed an error of law in finding that the unavailability of the prosecutor, under the particular circumstances of this case, constituted good cause for delay. As we held in *Frazier*, a trial judge, as well as an appellate court may not reverse an administrative judge's finding of good cause for postponement unless the defendant demonstrates a clear abuse of discretion or a lack of good cause as a matter of law. 298 Md. at 454, 470 A.2d 1269. Consequently, "[t]he determination that there was or was not good cause for the postponement of a criminal trial ... [is] a discretionary matter, [for the administrative judge or his designee] rarely subject to reversal upon review." 298 Md. at 451, 470 A.2d 1269. Thus, in reviewing this case, we are limited to determining whether there was an abuse of discretion or an error of law in the administrative judge's finding that the unavailability of a particular prosecutor due to trial schedule conflicts constitutes good cause for a postponement.

In its decision, the Court of Special Appeals did not simply review the administrative judge's decision to determine if the judge had abused his discretion or had committed an error of law. Instead, it applied its own conception of "good cause," holding that that provision requires the party seeking a postponement to exercise "reasonable dil-

igence" to avoid a postponement. 74 Md.App. at 410, 537
A.2d 1218. Thus far, we have not provided a rigid defini-
tion of the term "good cause" as used in § 591 and Rule
4–271. Rather, we have indicated that a determination of
what constitutes good cause is dependent upon the facts
and circumstances of each case as the administrative judge,
in the exercise of his discretion, finds them to be.[2] *Cf.*
*State v. Hicks*, 285 Md. 310, 319, 403 A.2d 356, *on motion*
*for reconsideration*, 285 Md. 334, 403 A.2d 368 (1979). *See*
*also Black's Law Dictionary* 623 (5th ed. 1979) ("[p]hrase
good cause depends upon circumstances of individual case,
and finding of its existence lies largely in discretion of
officer or court to which decision is committed"). *See*
*generally* Norton, *Maryland's Prompt Criminal Trial*
*Provisions: Hicks and Beyond*, 14 U.Balt.L.Rev. 447, 461–
67 (1985) (discussing what constitutes good cause for post-
ponement under § 591 and Rule 4–271).[3] Our cases provide
some insight as to the scope of the term's meaning through
specific examples of what qualifies as good cause for a
postponement. For example, we have found that the una-
vailability of a judge or courtroom constitutes good cause
for a postponement, *see Rosenbach v. State*, 314 Md. 473,
551 A.2d 460 (1989); *State v. Beard*, 299 Md. 472, 474 A.d
514 (1984); *State v. Harris*, 299 Md. 63, 472 A.2d 467 (1984);

---

**2.** *Compare State v. Hicks*, 285 Md. 310, 319, 403 A.2d 356, *on motion*
*for reconsideration*, 285 Md. 334, 403 A.2d 368 (1979), where we
defined "extraordinary cause" as being "cause beyond what is ordi-
nary, usual or commonplace; it exceeds the common order or rule
and is not regular or of the customary kind."

**3.** Those authorities which have defined good cause, generally have
adopted somewhat vague and amorphous definitions. *See Black's*
*Law Dictionary, supra,* at 623 (defining good cause as a "substantial
reason, one that affords a legal excuse.... [a] [l]egally sufficient
ground or reason"); *Ballentine's Law Dictionary* 527 (3rd ed. 1969)
(defining good cause as a "[s]ubstantial reason, a legal excuse"); *State*
*v. Churchill,* 82 Ariz. 375, 313 P.2d 753, 756 (1957) (defining good
cause pursuant to the state's speedy trial statute as meaning "substan-
tial reason, that is, one that affords a legal excuse"); *State v. McTague,*
173 Minn. 153, 216 N.W. 787, 788 (1927) (defining good cause as
meaning "a substantial reason—one that affords a legal excuse").

*State v. Frazier, supra;* that the inconvenience of trying several co-defendants separately is good cause for delay of all defendants' trials where one co-defendant is not ready to proceed to trial, *McFadden v. State,* 299 Md. 55, 472 A.2d 463 (1984); *Satchell v. State,* 299 Md. 42, 472 A.2d 457 (1984); that a defendant's last minute change of mind not to plead guilty is a good cause for delay, *Green v. State,* 299 Md. 72, 472 A.2d 472 (1984); that a delay in receiving an evaluation concerning the defendant's mental health is good cause for a postponement, *Carey v. State,* 299 Md. 17, 472 A.2d 444 (1984); and that the discovery of new evidence constitutes good cause for postponement, *Morgan v. State,* 299 Md. 480, 474 A.2d 517 (1984).

■ By defining good cause to encompass reasonable diligence, the Court of Special Appeals exceeded the proper scope of its appellate review. As we observed in *Frazier,* in reviewing the legislative history of § 591, in changing the extraordinary cause requirement to one of good cause, the Legislature "clearly intended to expand those circumstances furnishing the requisite cause for postponing a trial date beyond 180 days." 298 Md. at 459, 470 A.2d 1269. In enacting this change the Legislature did not delineate the specific reasons which would satisfy the good cause requirement, nor did it precisely define good cause. Rather it intended that good cause be defined by an administrative judge upon review of the particular circumstances of each case. In his testimony before the House Judiciary Committee, the bill's sponsor, Delegate (now Senator) John A. Pica, Jr., in urging the Legislature to adopt the good cause standard, indicated the necessity of permitting the courts greater latitude in determining which cases may be delayed beyond the 180 day standard. 298 Md. at 451, 459, 461. Furthermore, Pica's testimony, coupled with the fact that the Legislature did not define good cause in the statute, indicates that it intended that the determination of good cause be left to the administrative judge's discretion and not limited by a rigid list of specific examples. *Compare* 18 U.S.C.A. § 3161 (1985); Pa.R.Crim.P. 1100, contained in, 42

Pa.Cons.Stat.Ann. (Purdon 1988); American Bar Association, *Standards for Criminal Justice,* Standard 12–1.3 and Standard 12–2.3 (2nd ed. 1982) (all of which list the specific grounds for delaying a trial past the statutory deadline). Thus, in *Frazier* we found that the Legislature clearly intended "that crowded court dockets may constitute sufficient cause for trying a case beyond the 180–day limit." 298 Md. at 461, 470 A.2d 1269. We noted that "[w]hen overcrowded dockets are due in part to shortages of judges, prosecuting attorneys, public defenders, supporting personnel, or facilities, it must be remembered that public resources are not unlimited and there are many competing demands upon public funds." *Id.* at 457, 470 A.2d 1269. We found that the Legislature intended that the provisions of § 591 and Rule 4–271 prevent *chronic* delay, but that when a delay is the result of "an isolated instance rather than a recurring problem leading to chronic trial delays" the administrative judge's finding of good cause should be upheld. *Id.* at 463, 470 A.2d 1269.

■ A similar analysis may be applied to the present case. Delegate Pica's testimony indicates the desirability of changing the extraordinary cause standard of § 591 to good cause to give both the courts and the prosecution "some leeway in the disposition of an extremely heavy case load" so as to reduce the strain on both of these agencies. In urging the Legislature to adopt the good cause standard, Delegate Pica cited the "strain" and "pressure" which prosecutors, as well as courts, experience as a result of the 180–day limit and the mandatory nature of the rule. Pica's testimony in no way suggested that the change in § 591 was to be limited to alleviating the strains which the courts experienced under the rule. To the contrary, his testimony specifically indicated that the good cause standard was meant to help relieve the pressures placed upon prosecutors as well.

Given this legislative history, the reasons underlying our holding in *Frazier* are applicable in assessing the unavailability of a prosecutor. The delay in Toney's case, like that

in *Frazier,* was not the result of a chronic and recurring problem but rather could be viewed as an isolated instance. In this regard, the record indicates that the trial schedule conflicts which Ticknor was experiencing were relatively unusual and were caused by a series of murder trials which had lasted well beyond any reasonable estimate.[4] Judge Davis' comments in the record underscore the uniqueness of Ticknor's situation even further in that they reveal that Ticknor's work on the series of four murder cases had prevented him from trying between 30 and 40 other cases and that the Public Defender's Office had contacted Judge Davis and complained that his office was becoming backlogged specifically as a result of Ticknor's being unavailable due to his work on the series of murder cases. There is nothing in the record to indicate that Ticknor, or any other prosecutor, is habitually unavailable due to trial conflicts. Under these circumstances, the administrative judge could have properly concluded, as he did, that the delay in trying Toney was caused by an unusual situation and not by a chronic or recurring problem, thus justifying the prosecution's request for a postponement.

Other factors also support the administrative judge's finding of good cause in the present case. In his argument before the administrative judge, Ticknor cited the complex and serious nature of the case and his significant rapport with a key prosecution witness as reasons for continuing the case. Ticknor described the State's Attorney's interest in retaining a particular prosecutor on a difficult case as arising because prosecutors are not "fungible" and are not readily able to trade off serious cases. We think that the State's interest in maintaining prosecutorial continuity is a significant interest which in some instances may qualify as good cause for a postponement under § 591 and Rule 4–271.

Toney relies upon *Batey v. Supreme Court,* 71 Cal.App. 3d 952, 139 Cal.Rptr. 689 (1977) for the proposition that as a

---

4. On March 17, when Toney's trial commenced, the third in the series of four murder cases was in its seventh week.

matter of law, the unavailability of a prosecutor due to trial schedule conflicts does not constitute good cause for delay. In *Batey,* a three judge panel of the Court of Appeal of California held that the trial court abused its discretion in finding good cause for a continuance beyond the statutorily mandated period for trial where the determination of good cause was based upon the prosecutor's being engaged in the trial of another case. We intimate no opinion on the merits of the *Batey* holding because that case is factually distinguishable from the present case. Under the controlling statute in *Batey,* the State was required to bring the defendant to trial by October 13, 1976. On October 7, 1976, the prosecutor requested that the trial date be delayed beyond October 13th because he was engaged in the trial of another case. He informed the court that the presentation of the State's case in the other trial would take two to two and one-half more weeks and that the defense in that trial would last approximately one week. Based on this information the trial court granted a continuance until October 28th. On October 21, 1976, the State requested another postponement because the prosecutor was still engaged in the trial of the other case. At the hearing on this motion, the prosecutor gave a revised estimate that the case he was then trying would continue for two to four more weeks. Over the defendant's objection, the trial court once again granted a continuance and set a new trial date for January 11, 1977.

On appeal, the court found that the trial court's first decision to continue the case beyond the statutory period based upon the unavailability of the prosecutor was not an abuse of discretion. 71 Cal.App.3d at 956–57, 139 Cal.Rptr. 689. The appellate court, however, found an abuse of discretion in the trial court's granting of a second continuance based upon the unavailability of the prosecutor. *Id.* at 957, 139 Cal.Rptr. 689. The court noted that the prosecutor's original estimate of the length of the other trial was presumably made in good faith and thus justified the initial continuance. *Id.* However, the court found that the prose-

cutor suspected as early as October 13th and knew categorically on October 21st that he would not be ready to proceed to trial on the case and that once the prosecutor became aware that this estimate was incorrect and that he consequently would be unavailable on October 28th, he had an obligation to turn the *Batey* case over to another prosecutor or show cause why another prosecutor could not be prepared and ready to try the case. Based upon these circumstances, the appellate court found that the trial court abused its discretion in granting the second continuance.

In contrast, in Toney's case, the administrative judge granted only one continuance based upon the unavailability of the prosecutor.[5] Unlike the prosecutor in *Batey* when Ticknor became aware that he might not be available for trial on March 17th, he did turn the case over to another prosecutor and did not attempt to use his unavailability to gain a second postponement. Thus, we find that this case differs significantly from the *Batey* case, and we find no abuse of discretion in the administrative judge's initial granting of a postponement due to Ticknor's unavailability.

Moreover, another decision by a different panel of the same California appellate court has found prosecutor unavailability due to trial schedule conflicts to constitute good cause for a postponement. *See People v. Andrade*, 86 Cal.App.3d 963, 972, 150 Cal.Rptr. 662 (1978) (holding that the fact that the deputy district attorney, who was assigned to prosecute the defendant's case, was still engaged in another trial was a factor supporting the trial judge's finding that good cause for a postponement existed). *See also People v. Luparello*, 187 Cal.App.3d 410, 430–31, 231 Cal.Rptr. 832 (1986) (Upholding trial judge's finding that

---

**5.** As we indicated previously, the first postponement, which was granted on November 21, 1986, was based upon the State's receipt of new evidence. The second postponement, which was granted on December 22, 1986, was based upon the unavailability of a court. The third postponement, which was granted on February 6, 1987, was the only postponement where the administrative judge's finding of good cause was based upon the unavailability of the prosecutor.

good cause for a continuance existed based upon the prosecutor's unavailability due to his unexpectedly becoming involved with another murder trial). Courts in other jurisdictions have differed in their findings as to whether a prosecutor's unavailability qualifies as good cause for delay,[6] *see generally,* Annotation, *Illness or Incapacity of Judge, or Prosecuting Officer, or Prosecution Witness as Justifying Delay in Bringing Accused Speedily to Trial,* 78 A.L.R.3d 297,—(1977) (noting that "there is a split of authority on the question of whether the illness or incapacity of a judge or a prosecuting officer can justify a delay in bringing an accused speedily to trial").

As earlier observed, under *Frazier,* to establish that a postponement violates § 591 and Rule 4–721, the defendant must meet his burden of demonstrating that the administrative judge's decision was either a clear abuse of discretion or a lack of good cause as a matter of law. Toney failed to meet this burden. We cannot hold that the trial court committed an error of law in finding that Ticknor's unavailability constituted good cause to postpone the Toney trial. For these reasons we decline to reverse the original good cause determination as made by the administrative judge, and we find that the Court of Special Appeals erred in reversing that decision.

---

6. In *Frazier,* we noted a similar divergence in views as to whether court congestion constitutes good cause for delay. We indicated that in "some jurisdictions having statutes or rules similar to § 591 and Rule 746 [now Rule 4–271], courts have indicated that, whereas chronic court congestion is ordinarily not regarded as good cause for postponement, nonchronic congestion does not preclude a finding of good cause." 298 Md. at 455, 470 A.2d 1269. We also noted that in some states, where the purpose of the jurisdiction's speedy trial provision was "not only to protect the defendant's constitutional right to a speedy trial but, ... [like our own statute], to further society's interest in the prompt disposition of criminal trials by providing an impetus to remedy court congestion, some courts have found court congestion to constitute good cause for delay where either the courts or the legislature have acted to remedy the congestion." *Id.* at 457, 470 A.2d 1269.

JUDGMENT OF THE COURT OF SPECIAL APPEALS
REVERSED; CASE REMANDED TO THAT COURT FOR
CONSIDERATION ON THE MERITS OF THE OTHER
ISSUES RAISED BUT NOT DECIDED IN THE CASE;
COSTS TO ABIDE THE RESULT.