578 A.2d 828

**Morris MARKS, Jr.**

v.

**STATE of Maryland.**

**No. 1728, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Sept. 5, 1990.

Certiorari Denied Jan. 4, 1991.

270

Fred R. Joseph (Joseph, Greenwald and Laake, P.A. on the brief), Greenbelt, for appellant.

Margaret M. Schweitzer, Sp. Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Argued before MOYLAN, KARWACKI and GETTY (JAMES S.), Retired, Specially Assigned, JJ.

KARWACKI, Judge.

On July 25, 1987, Jeffrey Reynard Brown (Brown) was abducted, assaulted, and robbed. Appellant and a co-defendant, Rudolph Saint Dwyer (Dwyer), were arrested and indicted by the Grand Jury of Prince George's County for various crimes as a result of that episode. Appellant was charged with robbery with a deadly weapon, use of a handgun in the commission of a felony, assault with intent to murder, kidnapping, assault with intent to disable, theft of property worth less than $300, and obstruction of justice.

On September 4, 1987, appellant's counsel entered his appearance and requested a speedy trial. Trial was originally scheduled for November 30, 1987. Because continuances had been requested and granted, a hearing was held on February 22, 1988, to determine whether the trial date should be extended beyond February 26, 1988, the 180 day time limit imposed by Md.Code Ann., Art. 27, § 591 and Rule 4–271. *State v. Hicks*, 285 Md. 310, 403 A.2d 356 (1979). The judge designated by the administrative judge of the Circuit Court for Prince George's County to conduct that hearing granted the continuance. Appellant's trial began on May 25, 1989, and ended on June 1, 1989. Appellant was found guilty of robbery with a deadly weapon, use of a handgun in the commission of a felony, kidnapping,

assault with intent to disable, carrying a handgun, and obstruction of justice. He was sentenced to a total of 83 years imprisonment with credit for 143 days served. In his appeal from those judgments, appellant raises four issues:

I. Did the court err in finding good cause to extend the trial date beyond the 180 day time limit mandated by Maryland law?

II. Did the court err in denying appellant's motion to dismiss the charges against him based on his allegation that he was denied the right to a speedy trial?

III. Did the court err in denying appellant's motion in limine and appellant's motion for severance of the obstruction of justice charge?

IV. Did the court err in denying appellant's motion for new trial which was based on remarks made by the State's Attorney during closing arguments?

We answer these questions in the negative and affirm.

We can briefly summarize the evidence which supported appellant's convictions. On the morning of July 25, 1987, Brown was forced into an automobile which was driven by Dwyer and occupied by appellant, who was armed with a handgun. Dwyer and appellant repeatedly beat Brown, forced him to remove all of his clothing, and then threw him out of the car in a wooded area. Brown reported the occurrence to the police who apprehended Dwyer and appellant the same day.

## I.

A criminal defendant must be tried within 180 days of his appearance or the appearance of his counsel before the circuit court. Md.Code Ann., Art. 27, § 591; Rule 4–271. Violation of this mandate is a ground for dismissal. *State v. Hicks*, 285 Md. 310, 318, 403 A.2d 356 (1979). The 180 day clock in the instant case began to run on September 4, 1987, when appellant's attorney entered his appearance. Although the case was promptly scheduled for trial on November 30, 1987, postponements of the trial were re-

quested on several occasions by the State and on others by the defense. As the *Hicks* limit of February 26, 1988, approached, the State requested another postponement because the victim of the crimes at issue, Brown, had not been located by its investigators. At the hearing on this request, Assistant State's Attorney Laura Gwinn advised the court that she had learned that Brown was no longer at the address which he had given. When his telephone number was dialed, the person who answered said that Brown did not live there anymore and that Brown's whereabouts were unknown. Ms. Gwinn said that two of the State's investigators were attempting to locate Brown. Further, she explained that the Northern Action team of the Prince George's County Police Department knew Brown as a drug dealer in the Kanawha Street area and that members of the team advised her on a number of occasions that Brown had not been seen for the last several months. Finally, she emphasized that she would like the opportunity to continue her attempts to locate Brown because of the seriousness of the charges. Appellant's counsel opposed the motion, claiming that there was not good cause for the court to postpone the trial date. The court concluded that since both of the defendants were free on bond and because of the serious nature of the charges, the State should have another opportunity to locate Brown. The State's motion for continuance was granted.

On March 21, 1988, appellant made a motion to dismiss for violation of Md.Code Ann., Art. 27, § 591 and of Rule 4–271, claiming that good cause had not been shown by the State. The docket reflects that on May 13, 1988, a motions date of June 23, 1988, was set and a trial date was set for August 15, 1988. On June 23, 1988, the motions hearing was continued because the Assistant State's Attorney was ill.

On July 18, 1988, a hearing was conducted on appellant's motion to dismiss. The court denied the motion, ruling that the State had made reasonable efforts to locate Brown prior to February 26, 1988, even though it had later come to light

that he had been incarcerated in the Maryland penal system on other charges at that time. The trial date was continued until November 28, 1988.

Then, on November 18, 1988, appellant's counsel filed a motion to continue the trial date because appellant had retained two new attorneys on November 15, 1988, because of irreconcilable differences with his former attorney, and one of appellant's new attorneys planned to be out of the jurisdiction on November 28, 1988, for a long scheduled vacation. The court granted this motion on November 30, 1988, and the trial date was set for March 6, 1989.

The docket entry on March 6, 1989, reflects that the trial was continued yet again because appellant's co-defendant's attorney was in another trial. The trial was then scheduled for May 24, 1989. On May 24, 1989, the docket reflects that the trial was continued until May 25, 1989, and finally on May 25, the trial began.

■ The purpose of the 180 day rule is to protect the societal interest in the prompt trial of criminal cases; the benefits that the rule confers upon defendants are incidental. *State v. Hicks, supra,* 285 Md. at 320, 403 A.2d 356. The determination as to what constitutes good cause, warranting an extension of the trial date beyond the *Hicks* limit, is a discretionary one which "... carries a presumption of validity." *State v. Green,* 54 Md.App. 260, 266, 458 A.2d 487 (1983), *aff'd,* 299 Md. 72, 472 A.2d 472 (1984). This discretionary determination is "... rarely subject to reversal upon review." *State v. Frazier,* 298 Md. 422, 451, 470 A.2d 1269 (1984). Reversal of a finding of good cause is only warranted where there is "... a clear abuse of discretion or a lack of good cause as a matter of law." *State v. Toney,* 315 Md. 122, 131, 553 A.2d 696 (1989).

■ Appellant argues that the efforts by the State did not satisfy a due diligence standard. Appellant was arrested on July 25, 1987. The case was not assigned to an investigator who could help the Assistant State's Attorney locate Brown until October of 1987, one month before the

originally scheduled trial date. In January of 1988, another investigating officer, Detective James Wiseman, was assigned the search for Brown, but he had not located Brown before the February 22, 1988, good cause hearing. Detective Wiseman had made three or four trips to the address Brown had furnished the State in his attempt to locate him. He checked the District of Columbia records to see if Brown had been arrested there. Wiseman left a card on the door of the apartment where he thought that Brown was living. Wiseman did not look at the Assistant State's Attorney's file for information which might have helped him to locate Brown. Appellant argues that if these investigators had used due diligence they would have discovered that Brown was then incarcerated in the Maryland penal system. Further, appellant claims that defense counsel informed the Assistant State's Attorney as early as October 1987 that Brown was probably in jail. Thus, appellant concludes that the good cause finding on February 22, 1988, which extended the trial date beyond 180 days was in error. We disagree.

First, appellant's reliance on a due diligence requirement is misplaced. In fact, in *State v. Toney, supra,* 315 Md. at 133, 553 A.2d 696, the Court rejected this standard. Second, at the time of the hearing, the evidence before the court supported its ruling that good cause existed for continuing the trial date. The witness in question, Brown, was the victim of the serious crimes for which the two defendants were to be tried. This Court has held that good cause exists to extend a trial when a witness is unavailable. *Bolden v. State,* 44 Md.App. 643, 655–56, 410 A.2d 1085 (1980), *cert. denied,* 287 Md. 750 (1980). Even when continuances were subject to a more stringent standard, "extraordinary cause" as opposed to "good cause," this Court recognized that continuances could be granted when a necessary witness is absent because the fact that a witness is missing constitutes an extraordinary cause for delaying a trial. *Bethea v. State,* 26 Md.App. 398, 400, 338 A.2d 390 (1975). Thus, appellant has failed to demonstrate that the reason

for the postponement was not a good cause as a matter of law or that the court abused its discretion in granting the continuance.

Appellant also asserts that if there was good cause for granting a continuance at the initial hearing on February 22, 1988, the charges against him still should have been dismissed at the July 18, 1988, hearing on his motion to dismiss when the court learned that Brown had been incarcerated in a Maryland prison on February 22, 1988. Again, we disagree. Trial judges and appellate courts should not use hindsight in determining whether there was good cause to support an exercise of discretion by the administrative judge or his or her designee to grant a continuance beyond the *Hicks* date. *Morgan v. State*, 299 Md. 480, 488, 474 A.2d 517 (1984).

Appellant finally posits that his due process rights were violated by the court which found that there was good cause to continue the trial date because of his national origin. He bases that assertion in part on the following questions which were asked by the court at the February 22, 1988, good cause hearing:

THE COURT: Is Jeffrey Reynard Brown a Jamaican?

MS. GWINN [Assistant State's Attorney]: Yes.

THE COURT: And, is he a legal or illegal alien?

MS. GWINN: Do you know, Officer Fletcher?

OFFICER FLETCHER: As far as I know, he does have a green card.

MS. GWINN: This is Officer Fletcher of the Prince George's Police Department, who often works the Kanawha Street area and is familiar with the players up there.

THE COURT: Do you know whether he has ties to New York?

OFFICER FLETCHER: No, ma'am, I don't.

THE COURT: You just know he is a Jamaican and maybe has a green card and operates out of Langley Park?

OFFICER FLETCHER: That is correct.

Further, appellant claims that the hearing judge's prejudice against Jamaicans was manifested in the reasons she gave for finding that there was good cause:

THE COURT: Counsel, because this involved some Jamaicans in the Langley Park area, a high drug trafficking area, known notorious for its danger to society, because both of these defendants are out on bond, and because of the very serious nature of the charges, I think the State should have one last opportunity to try to locate their witness.

So, I am going to ask that you go down and find good cause for that reason. And, I will grant the State's motion for a continuance and ask that you all go down to the Assignment Office and pick a date.

We will make a docket entry, No Further Continuances.

Appellant did not object to the hearing judge's line of questioning or to her comments when finding good cause for the postponement. In fact his counsel attempted to use Brown's national origin to his benefit in making his argument that the trial date should not be extended because Brown would not be found:

I don't think the State's proffering anything that would indicate that within the foreseeable future there is good reason to believe that the State's essential witness is going to be available for any future trial date. I don't think the State is proffering any matters that my client, Mr. Marks, had anything to do with the unavailability of the State's witness. I think the Court can perceive that this person has minimal ties to the community and, as a result of all the good faith effort that the police have made in the past, has now relocated from this area, perhaps back to the country of his origin.

Since this issue was not raised before the court, it is not preserved for our review. Rule 8–131(a).

Even if this issue were preserved, we find no merit in it. The court questioned Officer Fletcher about Brown's national origin, so that the court could assess the State's

ability to locate Brown, trying to determine whether Brown had gone to another city or back to his native country. The good cause for the continuance was clearly based on the victim's unavailability as a witness and not upon appellant's nationality.

## II.

Appellant next contends that the court erred in denying appellant's motion to dismiss the charges against him because he was denied his right to a speedy trial under the Sixth Amendment to the U.S. Constitution and Article 21 of the Maryland Declaration of Rights. Constitutional rights, including an accused's speedy trial right, may be waived if not raised below. *Lewis v. State,* 79 Md.App. 1, 17, 555 A.2d 509 (1989), *cert. denied,* 316 Md. 549, 560 A.2d 1118 (1989). At the February 22, 1988, good cause hearing, appellant only raised an issue of speedy trial with respect to the 180 day provisions of Md.Code Ann., Art. 27, § 591 and Rule 4-271. The 180 day provision is separate and distinguishable from constitutional speedy trial rights. *State v. Brown,* 307 Md. 651, 657, 516 A.2d 965 (1986). The record is void of any determination by the trial court as to appellant's constitutional speedy trial right. Since appellant did not raise this issue below, he has not preserved it for our review. Rule 8-131(a).

Even if appellant had preserved this issue for our review, he still would not prevail. The Supreme Court established a balancing test in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), for determining whether there has been a violation of a defendant's Sixth Amendment speedy trial right. It is only necessary to apply this test after the reviewing court has determined that the delay is of constitutional dimension, a delay which is presumptively prejudicial. *Id.* at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. Maryland courts have examined the constitutional threshold question, but have not set a bright line test. *See State v. Gee,* 298 Md. 565, 578 n. 11, 471 A.2d 712

(1984), *cert. denied,* 467 U.S. 1244, 104 S.Ct. 3519, 82 L.Ed.2d 827 (1984). The Court has concluded, however, that a delay of one year and 14 days "... was sufficiently protracted to be 'presumptively prejudicial'." *Epps v. State,* 276 Md. 96, 111, 345 A.2d 62 (1975). In the instant case, the delay ran from July 25, 1987 (the date appellant was arrested) to May 25, 1989 (the date on which the trial began). Recognizing the aforementioned precedent, the State concedes that the delay in the instant case requires that we apply the *Barker* balancing test. The four factors to be considered in the balancing test are "... length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo, supra,* 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.

■ Concerning the reason for the delay of 22 months, we are required under the balancing test to give different weight to the various reasons for the delay:

A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Id.* at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117 (footnote omitted). Recognizing that some delay is essential for preparation of a case between arrest and trial, the time that is devoted to normal pretrial preparation is regarded as neutral and is not charged against either party. *Ferrell v. State,* 67 Md.App. 459, 463, 508 A.2d 490 (1986). Thus, the time delay between the date of arrest, July 25, 1987, and the first trial date, November 30, 1987, is not weighted against the State.

On November 30, 1987, a joint request for continuance was granted. The delay between that date and the date scheduled for the readiness conference, February 4, 1988, is given neutral weight since a joint continuance is not chargeable to either party. *Id.* at 464, 508 A.2d 490. On February 4, 1988, appellant's co-defendant requested a continuance which resulted in an 18 day delay between that date and the date of the good cause hearing, February 22, 1988. This delay is chargeable to the State because the State chose to try appellant and his co-defendant jointly. *Howard v. State*, 66 Md.App. 273, 292, 503 A.2d 739 (1986), *cert. denied*, 306 Md. 288, 508 A.2d 488 (1986). At the February 22 good cause hearing, the State requested a continuance so that Brown could be located. The continuance was granted, and a readiness conference was set for March 21, 1988. This delay is not attributable to either party because a continuance to locate a missing witness is a neutral reason for a delay and is chargeable to neither party. *Lee v. State*, 61 Md.App. 169, 180, 485 A.2d 1014 (1985), *cert. denied*, 303 Md. 115, 492 A.2d 616 (1985).

On the next scheduled date, March 21, appellant made a motion to dismiss, claiming that good cause had not been shown by the State on February 22. At this hearing, the court asked appellant's counsel if he was willing to go forward with the case that day. Appellant's counsel said that he wanted more time to examine additional facts. A status conference was then set for May 13, 1988. On May 13, 1988, the trial date was set for August 15, 1988. This four month and 25 day delay from March 21 until May 13 is attributable to the appellant because he was not ready to proceed on March 21. On July 18, 1988, there was a hearing on appellant's motion to dismiss. At the hearing, the trial date was set for November 28, 1988. The docket does not reflect why the case was continued, and the transcript of the hearing is silent on this point as well. Since the record is void of any evidence as to why the case was continued, this period of delay should not weigh against either party.

On November 18, 1988, appellant filed a motion to continue the trial date because he had retained new counsel, and one of his new attorneys would be on vacation on the trial date. The court granted this motion and scheduled motions and the trial for March 6, 1989, a three month and 6 day delay from November 28, 1988. This delay is chargeable to appellant. On March 6, 1989, the trial was continued until March 8, 1989, because appellant's co-defendant's attorney was in another trial. This two day delay is attributable to the State. On March 8, 1989, co-defendant's counsel was granted a continuance until May 24 because he was in trial. This two month and 16 day delay is attributable to the State. The trial was then continued for one day until May 25. Since the docket does not reflect the reason for the delay, we will not charge it to either party.

The delays attributable to the State were for 18 days, two days, and two months and 16 days. The delays attributable to appellant were for four months and 25 days and three months and 6 days. The remainder of the 22 months is not attributable to either party. A good part of the overall delay resulted from appellant's own requests for continuances. Further, all of the delay chargeable to the State was from appellant's co-defendant's request for continuances, and this type of delay is given less weight than a delay caused by the State attempting to deliberately hamper a defendant's case.

Moreover, the State did not obtain one long continuance; the court only granted the State's requests for continuances for three short periods, and thus, the delays are given less weight because "... delays must be examined in the context in which they arise and therefore a lengthy uninterrupted period chargeable to one side will generally be of greater consequence than an identical number of days accumulating in a piecemeal fashion over a long span of time." *Jones v. State*, 279 Md. 1, 7, 367 A.2d 1 (1976), *cert. denied*, 431 U.S. 915, 97 S.Ct. 2177, 53 L.Ed.2d 225 (1977).

The third factor which must be considered under *Barker* is whether appellant asserted his right to a speedy trial. Appellant asserted this right when his counsel filed his appearance on September 4, 1987. At no time after that period, however, did appellant raise the question of whether this right was being violated, and the court did not address it. Further, two of the continuance periods were requested by appellant himself. Thus, even though appellant asserted this right initially, his failure to assert it later at critical points undercuts his ability to rely upon his assertion of it.

Prejudice to appellant is the final factor that we must consider:

> A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern for the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

*Barker v. Wingo, supra,* 407 U.S. at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118 (footnote omitted). In the instant case, appellant did not suffer pretrial incarceration, and he does not rely on prejudice therefrom to support his claim. Similarly, appellant has failed to assert any impairment of his defense which is the most serious form of prejudice. Appellant has argued that he has suffered great anxiety over concern for his trial, but bald statements, without more, have little significance. *State v. Bailey,* 319 Md. 392, 417, 572 A.2d 544 (1990). Furthermore, appellant himself requested postponements. We have considered a defendant's

conscious choice to endure further the anxiety and risk of impairment to his or her defense by requesting continuances in weighing the prejudice caused to a defendant by continuances. *See Lewis v. State,* 71 Md.App. 402, 419–20, 526 A.2d 66 (1987). In *Lewis,* we found that the defendant, in requesting various postponements, had "... placed less weight on the prejudice resulting from pretrial delay than on the benefits to be gained therefrom." *Id.* at 420, 526 A.2d 66. In the instant case, appellant showed little concern about his trial. In fact his counsel sought to have the court rule on his previously filed motion to withdraw at trial because appellant failed to assist his counsel with his defense:

> MR. PONDS: On behalf of Mr. Marks, Your Honor, we have filed a motion to withdraw from his case. It's been some difficulties on my behalf, with Mr. Zukerberg, communicating with Mr. Marks. In fact, my recollection is through numerous attempts we've never discussed, we've never heard from him actually what occurred on this day, so our hands are tied as to what we can do for him.

In order to give counsel the opportunity to confer with appellant, the court revoked appellant's bond and placed him in detention for the lunch break, so that his counsel could confer with him. Since appellant could not have appeared to be more indifferent to his defense, we conclude that he did not suffer anxiety from the delay of his trial. Having balanced the four factor *Barker* test, we conclude that the record does not support appellant's assertion that he was denied his constitutional rights to speedy trial even if he had preserved that issue for appellate review.

### III.

 Prior to July 25, 1987, Brown witnessed a murder. Appellant and the co-defendant in the instant case were originally accused along with others of that murder, but the charges against them were later dismissed. The State has maintained throughout the instant prosecution that appellant's motive for assaulting Brown was to intimidate and/or

prohibit Brown from being able to testify at the murder trial. For this reason appellant was charged with obstruction of justice. All of the other charges against appellant arose from the incident which occurred on July 25, 1987. Appellant requested that the court sever the obstruction of justice count from the remaining counts, arguing that if the jury were presented with evidence which implicated appellant in a murder, the jury might improperly convict appellant for the instant crimes because of a belief that appellant is a bad person, not because appellant was actually guilty of the crimes at issue here. Along with his motion to sever, appellant made a motion *in limine* in his attempt to prevent the jury from hearing evidence about the murder. The court denied both of appellant's motions, and appellant argues that the court's failure to grant the motions was an abuse of discretion.

Under Rule 4–253(c), "if it appears that any party will be prejudiced by the joinder for trial of counts, charging documents, or defendants, the court may, on its own initiative or on motion of any party, order separate trials of counts, charging documents, or defendants, or grant any other relief as justice requires." "It is uncontroverted that the decision as to whether to grant a severance lies within the sound discretion of the trial court." *Grandison v. State*, 305 Md. 685, 705, 506 A.2d 580 (1986), *cert. denied*, 479 U.S. 873, 107 S.Ct. 38, 93 L.Ed.2d 174 (1986), *reh'g denied*, 479 U.S. 1001, 107 S.Ct. 611, 93 L.Ed.2d 609 (1986). The Court has held that a defendant who has been ". . . charged with similar but unrelated offenses is entitled to a severance where he establishes that the evidence as to each individual offense would not be mutually admissible at separate trials." *McKnight v. State*, 280 Md. 604, 612, 375 A.2d 551 (1977). There is only a presumption of prejudice in jury trials as a matter of law ". . . when the crimes, although similar, arose from separate incidents, independent of each other, unrelated, not bound together by common scheme, motive, or any other of the exceptions to the 'other crimes' rule, which would make the evidence with respect to them

mutually admissible at separate trials." *Frazier v. State,* 318 Md. 597, 609, 569 A.2d 684 (1990).

In the instant case appellant's obstruction of justice was his motive for committing the assaults, kidnapping, and robbery on July 25, 1987. Consequently, the evidence concerning all the crimes with which appellant was charged would have been mutually admissible in all of the cases for those crimes. The court did not abuse its discretion in refusing to sever the charges.

■■■ Similarly, we find no merit in appellant's allegation that evidence which was introduced about the murder unfairly prejudiced the jury against him. When considering the admission of other crimes evidence, we must first determine if the evidence is relevant within the contemplation of "other crimes" analysis.[1] *Harris v. State,* 81 Md. App. 247, 282, 567 A.2d 476 (1989), *cert. granted,* 319 Md. 111, 570 A.2d 1244 (1990). In the instant case the evidence was relevant for a reason other than to show appellant's propensity to commit crime since it demonstrated appellant's motive and intent for committing the crimes. Even if evidence of another crime is relevant, however, evidence must be presented to establish that the crime was in fact committed and that the defendant, appellant in the instant case, was in fact involved in the crime. *Lodowski v. State,* 302 Md. 691, 728, 490 A.2d 1228 (1985), *cert. denied,* 475 U.S. 1086, 106 S.Ct. 1469, 89 L.Ed.2d 725 (1986), *vacated,* 475 U.S. 1078, 106 S.Ct. 1452, 89 L.Ed.2d 711 (1986), *rev'd on other grounds,* 307 Md. 233, 513 A.2d 299 (1986). In the instant case this evidence was presented. Brown, an eyewitness to the murder, testified about it and explained that appellant was a friend of the two men who had done the shooting.

---

1. Arguably, this evidence is not "other crimes" evidence as it was made clear during the trial that appellant was not criminally responsible for the murder.

 Further, even if the other crimes evidence is offered for an acceptable, non-prejudicial reason, it is incumbent upon the trial judge to balance the probative force of the evidence against its potential for unfair prejudice. *Cross v. State*, 282 Md. 468, 474, 386 A.2d 757 (1978). When the trial court has reached its decision after engaging in that balancing process, the appellate court which reviews that decision extends great deference to it. *Harris v. State, supra,* 81 Md.App. at 298, 567 A.2d 476. We perceive no abuse of discretion in the trial court's determination that the probative value of admitting the evidence of the murder in the instant case clearly outweighed any prejudice to appellant. Without the evidence of the murder, there would be no basis for the obstruction of justice charge. As to the relevance of the murder evidence to the other charges, the evidence was relevant because it supported the State's theory of the motive for appellant's attack on Brown. Since appellant was not the perpetrator of the murder, he would not suffer from the improper prejudice that the rule against admission of other crimes evidence is designed to protect:

> There are two reasons for the rule. First, if a jury considers a defendant's prior criminal activity, it may decide to convict and punish him for having a criminal disposition. Second, a jury might infer that because the defendant has committed crimes in the past, he is more likely to have committed the crime for which he is being tried.

*Straughn v. State*, 297 Md. 329, 333, 465 A.2d 1166 (1983).

### IV.

 During closing arguments, the prosecutor made a statement that was objected to by appellant:

> MR. JONES: Ladies and gentlemen, I'm sorry that I have to object sometimes during closing and during the trial itself, but when counsel wants to put in something that's completely inappropriate and inadmissible to my feeling, which I believe those were, and which is why the

judge instructed you how you have to take the prior convictions, I have no choice but to object. I have gone to law school and have been trained in the rules of evidence. At least I have—

MR. PONDS [Appellant's co-counsel]: Objection.

MR. ZUKERBERG [Appellant's co-counsel]: Objection.

MR. PONDS: I take that as a personal affront. Mr. Jones is aware of—

THE COURT: Wow. Sit down and cool down.

Appellant argues that he should have been granted a new trial because the prosecutor is obligated to refrain from making remarks in front of the jury which are likely to instigate prejudice against the accused. *Holbrook v. State,* 6 Md.App. 265, 269, 250 A.2d 904 (1969). The decision as to whether to grant "... a new trial lies within the sound discretion of the trial court and its decision upon such a motion will not be disturbed on appeal except for the most extraordinary and compelling reasons." *Couser v. State,* 36 Md.App. 485, 495, 374 A.2d 399 (1977), *aff'd,* 282 Md. 125, 383 A.2d 389 (1978), *cert. denied,* 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 156 (1978).[2] The sentence which appellant objects to is "I have gone to law school and been trained in the rules of evidence. At least I have—." We do not perceive that this statement caused sufficient harm to warrant a new trial, especially since appellant's counsel objected before any possible improper remark was made. We arrived at this same conclusion in *Tibbs v. State, supra,* where a prosecutor made a similar statement. The prosecutor said " 'I think it is far [more] ridiculous for a lawyer to come up here and tell you ...'." *Id.,* 72 Md.App. at 253, 528 A.2d

---

**2.** Although appellant raises the issue as a denial of a motion for new trial, the issue may really involve a denial of a request for a mistrial because he was denied the opportunity to approach the bench to request a mistrial at the conclusion of the State's rebuttal. Nevertheless, appellant's argument would still fail under the standard for a mistrial, abuse of discretion, as we have concluded that the court did not abuse its discretion in denying appellant's motion for a new trial. *Tibbs v. State,* 72 Md.App. 239, 253, 528 A.2d 510 (1987), *cert. denied,* 311 Md. 286 (1987).

510. At this point defense counsel interrupted this statement with an objection. We held that since the prosecutor's sentence was never completed, "... there was very little, if any, harm done with respect to what she said." *Id.* In the instant case the context of the remark might allow one to surmise the remainder of the sentence, but it is not certain; there could be more than one meaning.

Even if the prosecutor's attempted remark was improper, it was not sufficiently prejudicial to warrant a new trial under an abuse of discretion standard. As the Court said in *Jones v. State*, 310 Md. 569, 580, 530 A.2d 743 (1987), *vacated on other grounds*, 486 U.S. 1050, 108 S.Ct. 2815, 100 L.Ed.2d 916 (1988), *vacated on other grounds*, 314 Md. 111, 549 A.2d 17 (1988), "... the mere fact that a remark made by the prosecutor to the jury was improper does not necessarily require a conviction to be set aside. Reversal is only required where it appears that the remarks of the prosecutor actually misled the jury or were likely to have misled or influenced the jury to the prejudice of the accused." In determining whether the prosecutor's remarks are prejudicial to the accused, three factors must be considered:

1. The closeness of the case.
2. The centrality of the issue affected by the error.
3. The steps taken by the trial judge to mitigate the effect of the remarks on the jury.

*Scott v. State*, 64 Md.App. 311, 319, 494 A.2d 992 (1985), *cert. denied*, 304 Md. 300, 498 A.2d 1186 (1985). In the present case the evidence adduced at trial did not make the determination of guilt a close call. The victim testified to the facts concerning the abduction, assault, and robbery by a man known to him. Second, the comment by the prosecutor did not go to the evidence adduced at trial or key issues such as defendant's silence, reasonable doubt, etc. Finally, as to the court's effort to mitigate the effect of the remark, even though the court did not give a curative instruction, an instruction was given that counsel's arguments are not evidence. As to appellant's contention that he was denied

the opportunity to request relief at the conclusion of the argument because the court denied his request to approach the bench, we are not persuaded. Appellant's counsel never proffered the reasons why he wanted to approach the bench, nor did he persist in his request beyond his preliminary inquiry.

Finally, "The law of Maryland is clear: the permissible scope of closing argument is a matter for the sound discretion of the trial court, the exercise of which will not constitute reversible error unless clearly abused and prejudicial to the accused." *Thomas v. State,* 301 Md. 294, 316, 483 A.2d 6 (1984), *cert. denied,* 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 153 (1985). Since the remarks by the prosecutor were brief, ambiguous, and tangential, we conclude that the court properly exercised its discretion in concluding that there was no basis for a new trial.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.